## Wytheville.

## SCHMIDT, ET AL., V. WALLINGER.

June 12, 1919.

1. PARTIES—*Misjoinder—Demurrer—Plea in Abatement.*—Misjoinder of parties cannot be reached by demurrer, but only by a motion to abate the action as to the parties improperly joined.

2. JOINDER OF CAUSES OF ACTION—*Assumpsit—Waiver of Tort.*—It was claimed that a special count in a declaration in an action of assumpsit set up a tort which was improperly joined as a cause of action with the common counts in assumpsit. The special count did allege a fraudulent and tortious transaction, but one in which the defendants were charged with having received money belonging in good conscience to the plaintiff, and for the refunding of which the law implies a promise. The action was specifically designated in the declaration as assumpsit.

   *Held:* That that form of action, if the plaintiff desired to waive the tort, was appropriate for the recovery of the money.

3. REAL ESTATE BROKERS—*Secret Profit—Declaration.*—In an action by a property owner against real estate brokers to recover a secret profit made by the brokers, the failure of the declaration to show whether or not the defendants were acting in the dual capacity of agents for the plaintiff and for the third party with whom the trade was made, was immaterial and did not render the declaration demurrable. According to the allegation of the declaration, the defendants were assuming to use their skill and influence primarily for the benefit of the plaintiff, and they were not mere middlemen, but, on the contrary, were the trusted agents of the plaintiff and owed her the same duty of loyalty and good faith which they would have owed her independent of any relationship with the third party. It was, therefore, unnecessary for the declaration to allege that the plaintiff did not know that the agents were also representing the third party and were to be paid a commission by him.

4. REAL ESTATE BROKERS—*Secret Profit—Allegation of Scienter in Declaration.*—In an action of assumpsit against real estate brokers by a client to recover a secret profit made by the

46

brokers, it was objected to the sufficiency of the declaration that it did not allege the *scienter;* that is, did not allege that the defendants knew of the falsity of their representations, and that it also failed to aver that such representations were false and material.

*Held:* That this position was untenable, because, although the declaration did not in terms contain these allegations, it stated facts which necessarily implied that the representations were material and that the defendants knew they were false.

5. EVIDENCE—*Admissibility — Compromise — Objection.* — The trial court's action in refusing to exclude the offer of one defendant to compromise plaintiff's claim, elicited on the cross-examination of the defendant, is not error, where substantially the same offer and others similar in character had already, and without objection, been testified to by a witness for plaintiff, one such offer having been designedly brought out in his cross-examination by defendant's counsel.

6. EXCEPTIONS, BILL OF—*Determination of Whether Exceptions were Taken in the Trial Court.*—Bills of exceptions upon which assignments of error relating to the admission or exclusion of certain testimony were based expressly certified that there was an objection and exception to the ruling of the court, but each of them concluded as follows: "The court certifies that counsel for defendants says that he made an exception to this ruling at the time, but neither the stenographer nor the court heard said exception." It was claimed that in this state of the record there was no sufficient evidence before the Supreme Court of Appeals that the defendants duly excepted in the court below.

*Held:* That this claim could not be sustained. The opportunity and responsibility for determining whether exceptions have been taken are with the trial court, and when that court resolves the doubt in favor of the party complaining of a ruling, the Supreme Court of Appeals cannot do less.

7. APPEAL AND ERROR—*Reversal.*—Where questions involved in bills of exceptions were of minor importance and were the occasion of such little controversy in the lower court as that an apparently experienced court reporter and a careful and capable presiding judge did not discover during the trial that any serious point was being raised in regard to them, they ought not to be made the subject of reversal.

8. REAL ESTATE BROKERS—*Middlemen—Secret Profit—Case at Bar.* —Plaintiff employed real estate brokers to effectuate an exchange of her city property for farm lands. The brokers called upon the owner of a farm for the purpose of attempting to trade for the plaintiff her city property for the farm, and at that time the brokers listed the farm for sale and secured from

the owner of the farm an agreement to trade the farm for $15 per acre net, with the understanding that the brokers would guarantee a sale of the plaintiff's city property so as to net the owner of the farm $15 per acre. The brokers failed to disclose to the plaintiff that the owner of the farm was receiving $15 per acre net for his farm, but on the contrary stated to the plaintiff that the owner of the farm would not trade his farm for less than $20 per acre.

*Held:* That the relationship of the brokers to the plaintiff was such that they were legally bound to deal openly and in good faith with her. Not being mere middlemen, the defendants could not lawfully have charged the owner of the farm a commission, and although they had plaintiff's consent to charge a commission, that did not warrant them in secretly arranging with the owner of the farm so as to make their profit on the transaction by a speculation on plaintiff's property.

9. BROKERS—*Middlemen—Compensation from Both Parties.*—Where an agent stands in the situation of a mere middleman, not having undertaken to act as agent for either party or to exercise for either his skill, knowledge or influence, but merely to bring the parties together to deal for themselves, and he himself stands entirely indifferent between them, it is held that he may recover from each, although each was ignorant of his relation to the other. Such cases may undoubtedly occur, but "their exceptional character should appear clearly, before they should be exempted from the general principle." In order to occupy the position of the middleman, the broker must have limited his exertions to such a service. If in addition thereto, a middleman assists either in effecting a trade, he becomes to that extent a partisan agent, and the duty immediately devolves upon him to disclose his agency to the other.

10. REAL ESTATE BROKERS—*Liability—Duty of Disclosure.*—The broker who, in disregard of his duty, conceals adverse interests or secretly enters into the service of, or himself becomes, the adverse party, forfeits his right to commissions, must account for gains unlawfully acquired, and will be liable in damages for any loss caused to his principal by his perfidious conduct. Failure to disclose information necessary for his principal's protection will have the same effect.

11. BROKERS—*Secret Profit—Ratification.*—In an action by a client to recover a secret profit made by her brokers in an exchange of property between herself and one Basho, the court instructed the jury: "If you believe from the evidence the plaintiff, after executing the deed to Mr. Basho of her property, learned of the facts in reference to the transaction she is now complaining of, *and with full knowledge of all said facts* then executed,

along with said Basho, a deed conveying her said property to the defendant A. D. Smith in accordance with the understanding with Mr. Basho and the defendants, and in the said deed required the said A. D. Smith to assume certain mortgages executed by the said plaintiff, then this was a ratification of the transaction complained of, and you must find for the defendants." The words "and with full knowledge of all the facts" were added by the court over the objection of the defendants. It was objected that the instruction tended to confuse and mislead the jury because it did not sufficiently specify what facts were referred to by the expression "all said facts."

*Held:* That the instruction could have had no such tendency. The question was one of fact, depending upon conflicting evidence, and the instruction as modified presented that question fully and fairly to the proper tribunal.

12. Brokers—*Actions—Instructions.*—In an action against brokers for secret profits, an instruction was properly refused which ignored the plaintiff's theory and the rule of law applicable to the facts of the case as to the duty of agents to deal openly and in good faith with their clients.

13. Verdict—*Partnership — Amendment of Verdict by Supreme Court of Appeals.*—In an action against three brokers for obtaining a secret profit the verdict was as follows: "We, the jury, in the issue joined, find for the plaintiff and fix the damage at $1,600.00 against E. F. Schmidt & Co., A. D. Smith, and Jno. M. Brandt, defendants." It appeared from the testimony that E. F. Schmidt & Company was the firm name under which E. F. Schmidt was doing business. It further appeared that E. F. Schmidt, A. D. Smith and John M. Brandt were jointly and equally interested in the transaction involved in the litigation, and that whether regarded technically as partners or not, they were jointly interested in the profits and jointly liable to the plaintiff. It was objected to the verdict that there was no such partnership as E. F. Schmidt & Company existing between the three defendants and that the result of the verdict in this form was to establish the existence of such .partnership.

*Held:* That the form of the verdict rather negatived the idea that Smith and Brandt were members of the firm. The court entered a judgment against the defendants without specifying them by name, and although the Supreme Court of Appeals was of opinion that this was sufficiently accurate, in order to remove any possible doubt, it amended the judgment so as to make it read in terms against E. F. Schmidt, trading as E. F. Schmidt & Co., and against Jno. M. Brandt and A. B. Smith, all three as individuals.

Error to a judgment of the Circuit Court of city of Richmond in an action of assumpsit.   Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiffs in error.

*Haw & Haw,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action of assumpsit brought by Amelia C. Wallinger against E. F. Schmidt, A. D. Smith and Jno. M. Brandt, jointly and severally as individuals, and against the same persons as partners under the firm name of E. F. Schmidt & Co.   The declaration contains the common counts and a special count to the following effect:   That on or about the 11th of December, 1915, the plaintiff owned a house and lot in the city of Richmond and employed the defendants as her agents, upon an agreed commission, to trade the same for farm property; that a price and value was fixed on the house and lot by her and her said agents; that thereupon the agents offered to her in trade for her house and lot the farm of one Basho, in Hanover county, containing 640 acres, at the price of $15.00 per acre, being $9,600; that the plaintiff was willing to accept the Basho farm at that price; that at a later date, her agents represented to her that the farm could not be purchased for less than $20 per acre, or $12,800; that the plaintiff, acting and relying entirely upon the representations of the agents, purchased and paid for the farm at the price of $12,800, and received a deed from Basho through the agents, believing under their representations that Basho was actually receiving a consideration of $12,800 for his farm, and that the agents were receiving

as compensation for their services the commissions agreed upon; that in fact and in truth, without any knowledge thereof on her part, the agents purchased the farm from Basho at $15.00 per acre, or $9,600, and, regardless of their obligation to her and in violation of their 'duties as her agents, sold and traded the farm to her at the price of $20.00 per acre, or $12,800, being an excess of $3,200 more than the purchase price charged and received by Basho; and that as a result the defendants received and obtained from her $3,200, which she was entitled to recover of them.

There was a verdict and judgment in favor of the plaintiff for the sum of $1,600, and to that judgment this writ of error was awarded.

The first assignment of error calls in question the action of the trial court in overruling a demurrer to the declaration. The grounds of the demurrer were: (1) that there was a misjoinder of parties and of causes of action, and (2) that "the second count fails to allege *scienter*, or whether the defendants were the agents of the owner of the farm when she was offered the farm in trade and whether or not she knew they were the agents of the owner of the farm, and because the declaration fails to say whether the declarations complained of were false and material."

[1] We are given no reason, and we perceive none, for the contention that there was a misjoinder of parties. If the point had been good, it could not have been reached by demurrer, but only by a motion to abate the action as to the parties improperly joined. Burks' Pl. & Pr., p. 76, note; Va. Code, 1904, sec. 3258-a; *Lee* v. *Mutual, etc., Ass'n,* 97 Va. 160, 162, 33 S. E. 556; *Riverside Cotton Mills* v. *Lanier,* 102 Va. 148, 159, 45 S. E. 875; *Carlton* v. *Boudar,* 118 Va. 521, 524, 88 S. E. 174.

[2] It is claimed that the special count sets up a tort which is improperly joined as a cause of action with the common counts in assumpsit. The special count does allege a fraud-

ulent and tortious transaction, but one in which the defend-
ants are charged with having received money belonging in
good conscience to the plaintiff, and for the refunding of
which the law implies a promise. The action is specifically
designated in the declaration as assumpsit; and that form
of action, if the plaintiff desired to waive the tort, was ap-
propriate for the recovery of the money. 1 Bart. Chy. Pr.
125; Burks' Pl. & Pr., 121; *B. & O. R. Co.* v. *Burke,* 102
Va. 643, 647, 47 S. E. 824.

[3] The failure of the declaration to show whether or
not the defendants were acting in the dual capacity of
agents for Basho and for plaintiff with the latter's knowl-
edge of that fact is immaterial and does not render the dec-
laration demurrable. This ground of demurrer incidentally
raises the contention, more fully dealt with in connection
with the merits of the case, that the agents were merely
middlemen and were not, therefore, bound to disclose to the
plaintiff what transpired between them and Basho. The
doctrine here invoked by defendants does not apply to this
case. According to the allegations of the declaration, the
defendants were assuming to use their skill and influence
primarily for the benefit of the plaintiff, and they were not
mere middlemen, but, on the contrary, were the trusted
agents of the plaintiff and owed her the same duty of loy-
alty and good faith which they would have owed her inde-
pendent of any relationship with Basho. It was, therefore,
unnecessary for the declaration to allege that the plaintiff
did not know that the agents were also representing Basho
and were to be paid a commission by him. She did know
this as a matter of fact, but such knowledge was immaterial
to her right of recovery, as will hereinafter more fully ap-
pear.

[4] The further objection to the sufficiency of the dec-
laration on the ground that it does not allege the *scienter*—
that is, does not allege that the defendants knew of the fal-

sity of their representations—and that it also fails to aver that such representations were false and material, is likewise untenable. The declaration does not in terms contain these allegations, but it states facts which necessarily imply that the representations were material and that the defendants knew they were false.

Before taking up the next assignment of error, it will be in order to state the salient facts upon which the verdict and judgment in question were rendered. In making this statement we shall deal with the evidence as upon a demurrer thereto, since upon this review of the case we are bound to observe that rule. The evidence was sharply conflicting upon some of the material points in the case, but the verdict of the jury settled this conflict in favor of the plaintiff. Reference to such of the evidence in conflict with the plaintiff's theory as is material to questions arising upon the instructions will appear in the proper connection, but in the general statement of the case we shall be governed by the rule above indicated.

Amelia C. Wallinger owned a house and lot in Richmond, and desired to trade the same for a farm. To this end, she applied, through her husband and representative, C.. H. Wallinger, to the real estate firm of E. F. Schmidt & Co. At that time, E. F. Schmidt was the sole member of the firm, and was conducting his business under that trade name. A. D. Smith, a former member, and John M. Brandt, both real estate agents, had offices with Schmidt, acted as sales agents for him, and were interested equally with him in commissions on such sales as they conducted. Smith specialized in city property and Brandt in farm land. Schmidt and Smith were neighbors of Wallinger, and he knew and trusted them. When he called at their office for the purpose above indicated, they referred him to Brandt as their farm specialist, and the latter stated that he could

not think of a suitable property just then, but would try to find one.

Some days later, Wallinger called again at the office of these gentlemen, and Brandt stated that he thought he had located a suitable place, known as the Oliver farm, in Hanover county. Wallinger, Brandt and Smith went to visit the Oliver farm, but it proved to be too high in price. They then proceeded to look at a 640-acre tract, known in this case as the Basho farm, which had not been listed with the agents, but which Brandt that day learned from a friend was probably for sale. None of the parties, plaintiff or defendants, at that time knew who owned the Basho property. Wallinger, who had fixed the price of his wife's city property at $7,750, was favoraby impressed with the Basho farm, and was willing to trade for it at $15 per acre. Brandt stated that he thought the farm could be bought "around $15 or $20 an acre," and Wallinger expected from what Brandt said to him at the time that the price would not be in excess of $15 per acre.

It was then agreed that the agents would ascertain who owned the property and the price at which it could be purchased. Shortly thereafter, they did ascertain that Basho was the owner and would sell at $15 per acre net to him. Smith and Brandt went to the home of Wallinger to discuss the proposed trade, and then and there represented to him that Basho's price was $20 an acre, and that he would not sell for any less. Wallinger, after some hesitation and complaint in regard to the price, decided to take the farm, and at the instance of Smith and Brandt wrote out four several propositions for them to use in trying to close the trade with Basho.

With these propositions in hand, Brandt and Smith procured from Basho an offer to sell the 640-acre farm for $9,-600 net ($15 per acre), $1,000 to be paid in cash and $8,600 to be evidenced by a note secured by mortgage thereon, with

47

the further understanding that while the Wallinger prop-
erty was to be taken by Basho in the trade, it was to be
sold or handled by the agents in such manner as to net
Basho $15 per acre for his farm, the entire transfer to be
completed and the transaction closed at the time he made
his conveyance for the farm. If Basho saw the four writ-
ten propositions, he paid no attention to them because he
was at no time interested in the Wallinger property. He
would not agree to take that property at all except upon the
conditions above mentioned, and he was not otherwise con-
cerned in or connected with it.

Wallinger understood, and it was agreed between him
and the agents, that he was to pay the prevailing commis-
sion of 3% on the city property, and that they were to re-
ceive from Basho the prevailing commission of 10% on the
farm land. Their agreement, however, with Basho, was
that he was not to pay any commission at all, but that they
were to make the property net him $15 an acre and get their
own commission over and above that. Basho's statement on
this point is as follows: "I had nothing else to do with the
case; I don't know about the price they received. I told
them I wanted my property to net me $15 an acre, and for
them to make their commission over and above that. I
didn't even know the price they sold it to Mr. Wallinger
for;" and he further testifies that he does not remember
whether the price of the city property was ever mentioned
to him by the agents, that it did not suit him to take that
property; that he did not know, or care to know, anything
about it; that the agents assured him they would take that
property off his hands, and that he told them they must
make his land bring him $9,600, and that "all over that they
could have."

After making this arrangement with Basho, the agents
represented to Wallinger that they had arranged for the
exchange of the property in accordance with the terms of

what is known as offer No. 4, being one of the written prop-
ositions theretofore made by Wallinger, as follows:

"E. F. Schmidt & Co., agents for owner:

"I hereby agree to exchange my equity in 815 Stuart road,
Richmond, Va., lot 83′ 5″x140 feet and all improvements
thereon, with a mortgage of $3,000.00 due in about one year
for 640 acres of land situated in Hanover county, Va., on
Washington highway, known as the White House tract, with
mortgage of $9,000.00, mortgage to run about six years, sub-
ject to curtailment yearly if desired by party acquiring this
land, $1,000.00 to be paid me in cash, provided the title is
free from valid objections; to be settled for within thirty
days from date hereof.

"Witness my hand and seal at Richmond, Va., this 16th
day of November, 1915.

"C. H. Wallinger    (Seal).

"Endorsement on back:   Land at $20.00 acre.   House,
83′ 5″ ground, at $7,750.   $1,000 to be paid me."

The trade was consummated upon these terms, except
that in working out the final details of the transaction, the
note and mortgage on the farm were made for $8,600 in-
stead of $9,000, and that Wallinger received $600 instead
of $1,000 in cash.

The defendants did not intimate to Wallinger that Basho
was in fact only getting $15 per acre for his land; but, upon
the contrary, led him to believe that the price was $20 per
acre and that Basho would not sell the land for less than
that price.

With the understanding that she was selling her house at
$7,750 and buying the farm at $12,800, Mrs. Wallinger ex-
ecuted to B. K. Basho a deed for the city property, and upon
the same date received from him a deed for the Hanover
farm; and Basho, at the same time, but without Wallinger's

knowledge, made a deed to A. D. Smith for the Wallinger house and lot. It appears that each of these deeds recited a consideration of "ten dollars and other valuable consideration," and so did not purport to show the valuations placed on the properties in the exchange.

In order to make the transaction conform both to the Wallinger offer No. 4 and to the written proposition from Basho, it was necessary for the agents to pay, and they did pay, out of their own funds $600 to Wallinger and $1,000 to Basho—a pure piece of legerdemain, so far as Wallinger was concerned.

The conveyance from Basho to A. D. Smith for the Wallinger property was made for the mutual benefit of all three of the defendants. There was, as shown by the written offer No. 4, quoted above, a $3,000 mortgage on this property, which, when added to the $1,000 they paid Basho and the $600 they paid Wallinger, made the total cost to them $4,600. In a subsequent trade they have disposed of the Wallinger property at a valuation of $6,500, and at that valuation they have made a profit of $1,900. The actual realization of this profit depends upon the final disposition by them of other property which they got in the second trade. Their real profit may be more or less than $1,900.

Shortly after the exchange with Basho had been concluded, Wallinger ascertained the true facts, complained to the agents, did not get a satisfactory offer of adjustment, and thereupon his wife brought this suit.

[5] Recurring now to the assignments of error, the second one complains of the action of the court in refusing to exclude from the jury the defendant Schmidt's statement, elicited on cross examination, that he had offered to settle the controversy by a conveyance to Mrs. Wallinger of a piece of property worth about $500. We need not stop to consider whether the objection would have been sound as an original proposition, because substantially the same offer

and others similar in character had already, and without objection, been testified to by Wallinger himself, one such offer having been designedly brought out in his cross examination by defendants' counsel.  *Va. & S. W. R. Co.* v. *Bailey,* 103 Va. 205, 222, 49 S. E. 33; *Douglas Land Co.* v. *Thayer Co.,* 107 Va. 292, 297, 58 S. E. 1101.

[6, 7]    The third, fourth, fifth, sixth and seventh assignments relate to the admission or exclusion of certain testimony as to the respective values of the city and farm properties involved in the suit.    The evidence was of such a character as that its respective admission or exclusion very probably had no effect on the verdict of the jury.    Each of the bills of exceptions upon which these assignments are based expressly certifies that there was an objection and exception to the ruling of the court, but each of them concludes with the following rather unique certificate:    "The court certifies that counsel for defendants say that he made an exception to this ruling at the time, but neither the stenographer nor the court heard said exception."    It is insisted by counsel for the plaintiff that in this state of the record there is no sufficient evidence before this court that the defendants duly excepted in the court below.    We can hardly take this view of the question.    The opportunity and responsibility for determining whether exceptions have been taken are with the trial court, and when that court resolves the doubt in favor of the party complaining of a ruling, this court cannot do less.

As already indicated, however, we are satisfied that the questions involved in these bills of exceptions were of minor importance and ought not to be made the subject of reversal.    They were certainly the occasion of such little controversy in the lower court as that an apparently experienced court reporter and a careful and capable presiding judge did not discover during the trial that any serious point was being raised in regard to them.

[8]    This brings us to the eighth assignment of error, which questions the correctness of the following instruction, known as plaintiff's instruction No. 1:

"The court instructs the jury that if the jury believe from the evidence that Amelia C. Wallinger engaged the defendants as her agents to make a trade of her house and lot No. 815 Stuart road, in the city of Richmond, for farm property and stipulated that the said house and lot was to be traded at a valuation of $7,750.00, and that the said agents representing the said Amelia C. Wallinger, the plaintiff, called upon B. K. Basho, the owner of the White House farm, in Hanover county, containing 640 acres, for the purpose of attempting to trade for the plaintiff her house and lot for the farm of the said Basho, and that at the time the said agents listed the farm of B. K. Basho for sale and later secured from the said B. K. Basho an agreement to trade the said farm at $15.00 per acre net, with the further understanding that the said agents would guarantee a sale of the house and lot of the plaintiff so as to net the said Basho $15.00 per acre, or $9,600 for his farm, and that upon getting such agreement, the said agents failed to disclose to the plaintiff that the said B. K. Basho was receiving $15.00 per acre net for his farm, and on the contrary stated to the plaintiff that B. K. Basho would not trade his farm for less than $20.00 per acre, and that pursuant thereto the said plaintiff executed a deed to B. K. Basho conveying her aforesaid house and lot, and received from the said B. K. Basho a deed to the said farm, and that the said B. K. Basho on the same day reconveyed the said house and lot to the said agents and received as a consideration of the purchase of his farm instead of the purchase price of $20.00 per acre, $12,800.00, the purchase price of $15.00 per acre, $9,600.00, evidenced by the note of the plaintiff secured upon the aforesaid White House farm for $8,600.00 and $1,000.00 in cash paid to him by said agents, then the jury are instructed that

the said agents have not dealt fairly with their principal, the plaintiff, and have failed to disclose to her and have concealed from her matters of a material nature touching the subject matter of the agency, and have speculated with their principal's property and are, therefore, responsible for the actual loss and damage suffered by the said principal by reason thereof."

The first objection urged to this instruction is that it fails to recite certain evidence showing that Smith and Brandt went to see Basho at Wallinger's request; that he understood and agreed that they would act as Basho's agents and were to receive commissions from him, thereby omitting defendants' theory that the agents were acting as middlemen. The objection is not sound. According to the undisputed facts of the case, the relationship of the agents to Wallinger was such that they were legally bound to deal openly and in good faith with him. The question of commissions is one quite apart from the real question in the case. It is true that the defendants had the consent of Wallinger to act as agents for Basho and to charge a specified commission of 10% on the sale of the farm. Not being mere "middlemen," the defendants could not lawfully have done even this much without Wallinger's consent. But the gravamen of the plaintiff's case is, not that they charged Basho a commission, but that they did not do so, and on the contrary, secretly arranged with him so as to make their profit on the transaction by a speculation on the plaintiff's property.

The doctrine with reference to middlemen in real estate transactions, usually finding its application in cases which, unlike this one, involve the agent's right to charge both parties a commission, is clearly stated in the second edition of Mechem on Agency, vol. 1, sec. 1591, and vol. 2, sec. 2475, as follows:

[9]  "Sec. 1591.  As has been seen in an earlier section, and as will be more fully discussed under the head of brokers, it is possible that the agent, *instead of being one in whom any particular trust and confidence is reposed, or upon whom either party relies for the protection of his interests,* may be a mere 'middleman,' whose undertaking it is merely to bring the parties in interest together and then leave them to conduct their own negotiations.  In such cases, it is said that, *inasmuch as neither party relies uopn the judgment or fidelity of the agent,* he violates no duty in undertaking to perform this service for both, and, therefore, may properly have compensation from both."  (Italics added.)

"Sec. 2475.  Where, however, the agent stands in the situation of a mere middleman, *not having undertaken to act as agent for either party or to exercise for either his skill, knowledge or influence,* but merely to bring the parties together to deal for themselves, and he himself stands entirely indifferent between them, it is held that he may recover from each, although each was ignorant of his relation to the other.  Such cases may undoubtedly occur, but, as has been well said, 'their exceptional character should appear clearly, before they should be exempted from the general principle.'

"In order to occupy the position of the middleman, it is said in a recent case, the broker must 'have limited his exertions to such a service.  If, in addition thereto, a middleman assists either in effecting a trade, he becomes to that extent a partisan agent, and the duty immediately devolves upon him to disclose his agency to the other.'"  (Italics added.)

[10]  It is readily apparent from the foregoing quotation that the defendants were not mere middlemen, and that the law governing that class of agents has no place in this controversy.  The doctrine applicable to the case at bar, on

the contrary, is stated by the same author as follows: "So, as has been seen in many cases in the preceding sections, the broker who, in disregard of his duty, conceals adverse interests or secretly enters into the service of, or himself becomes the adverse party, forfeits his right to commissions, must account for gains unlawfully acquired, and will be liable in damages for any loss caused to his principal by his perfidious conduct.  Failure to disclose information necessary for his principal's protection will have the same effect."  2 Mechem on Agency (2d ed.), sec. 2477.  See also *Ferguson* v. *Gooch,* 94 Va. 1, 8, 26 S. E. 397, 40 L. R. A. 234; 9 Corpus Juris, pp. 576, 577.

What has been heard said with reference to instruction No. 1 and the doctrine of middlemen in real estate transactions makes it unnecessary to discuss the alleged error of the court in refusing to give defendants' instruction "A," and in giving the plaintiff's instruction No. 2.

Under the eighth assignment of error, it is further claimed in the brief that the plaintiff's instruction No 3 was erroneous, but it was stated by defendants' counsel in the oral argument that the objection to this instruction was not insisted upon, being without substantial merit.

[11]    The ninth assignment complains of the refusal of the court to give instruction No. 4, asked for by the defendants, in its original form, and in modifying the same by adding therein the words, "and with full knowledge of all the facts."  The instruction as given (except italics which we have added) was as follows:   "The court instructs the jury that if you believe from the evidence the plaintiff, after executing the deed to Mr. Basho of her property, learned of the facts in reference to the transaction she is now complaining of, *and, with full knowledge of all said facts,* then executed along with said Basho a deed conveying her said property to the defendant, A. D. Smith, in accordance with the understanding with Mr. Basho and the defendants, and

in the said deed required the said A. D. Smith to assume certain mortgages executed by the said plaintiff, then this was a ratification of the transaction complained of, and you must find for the defendants."

The evidence upon which this instruction depended was substantially as follows:. The deed from Wallinger to Basho contained an error in description, and was recorded in that condition. Before the deed from Basho to Smith was recorded, this error was discovered, and to correct the mistake a new deed was executed to Smith in which Basho and Wallinger and wife all united. This deed recited that Wallinger and wife joined in it to correct the mistake. Wallinger testified that he paid no attention to the second deed further than to observe that it corrected the description, and did not notice that Smith, instead of Basho, was the grantee. Testimony for the defendants tended to show that Wallinger had learned all the facts when he and his wife executed the second deed, and the contention, as indicated by the instruction, was that the plaintiff had ratified the conduct on the part of the defendants which was complained of in the declaration. The question was one of fact, depending upon conflicting evidence, and the instruction, as modified, presented that question fully and fairly to the proper tribunal. It is said that the instruction tended to confuse and mislead the jury because it did not sufficiently specify what facts were referred to by the expression "all said facts." We think it manifest, from a mere reading of the instruction, that it could have had no such tendency.

[12] It is further urged, under this assignment, that the court erred in refusing to give the defendants' instruction "B," which was as follows: "The court instructs the jury that if you believe from the evidence that when the defendants, Brandt and Smith, called on Basho to list the property with them, and that he did so, and gave them the price of $20.00, and that this was reported back by them

to the plaintiff or her husband as her agent, and thereupon the plaintiff, through her husband, made several written offers for a trade of the farm of Mr. Basho, and thereupon the defendants, Brandt and Smith, presented these writ-ten offers to Basho, who would not make the trade unless the defendant, E. F. Schmidt & Co., would guarantee to dispose of the Wallinger house, so that the transaction would net said Basho $15.00 per acre on his farm, and that the said E. F. Schmidt & Co., finding that said Wallinger prop-erty could not be sold, so as to carry out this guarantee, set-tled with Mr. Basho so that his farm netted him $15.00 per acre, and then had Wallinger's property deeded to A. D. Smith, and that as a result of this transaction the said defendants did not earn anything over and above the price of $15.00 per acre and the commission of 10%, and if you believe that this was caused by the Wallinger property be-ing priced at more than it was worth, then you must find for the defendants."

There was evidence on behalf of the defendants (in con-flict with that on behalf of the plaintiff) that Basho had first asked $20.00 per acre for his land; but the instruction was properly refused, because it ignored the plaintiff's theory and the rule of law applicable to the facts of the case as to the duty of the agents to deal openly and in good faith with Wallinger and to give him the opportunity to de-termine for himself rather than to secretly substitute their own judgment as to what he would be willing to do with full knowledge of the facts. This is especially true in view of the proof that the agents unquestionably were speculat-ing without his knowledge on his city property, and that, as a matter of fact, they had already made a trade with it whereby they realized an apparent profit of $1,900.

[13]    The form of the verdict was as follows: "We, the jury in the issue joined, find for the plaintiff and fix the damage at $1,600.00 against E. F. Schmidt & Co., A. D.

Smith and Jno. M. Brandt, defendants." It is urged under the tenth assignment of error that the evidence shows that there was no such partnership as E. F. Schmidt & Co. existing between the three defendants and that the result of the verdict in this form is to establish the existence of such partnership. We do not so understand. The testimony shows that E. F. Schmidt & Co. was the firm name under which E. F. Schmidt was doing business. It further shows that E. F. Schmidt, A. D. Smith and Jno. M. Brandt were jointly and equally interested in the transaction involved in this litigation, and that whether regarded technically as partners or not, they were jointly interested in the profits and jointly liable to the plaintiff. The form of the verdict rather negatives the idea that Smith and Brandt were members of the firm. The court simply entered a judgment against the defendants without specifying them by name. This, we think, was sufficiently accurate, but in order to remove any possible doubt, this court will amend the judgment so as to make it read in terms against E. F. Schmidt, trading as E. F. Schmidt & Co., and against Jno. M. Brandt and A. B. Smith, all three as individuals.

The eleventh assignment of error simply questions the action of the court in refusing a motion in arrest of judgment upon grounds which have already been disposed of adversely to the contention of the defendant.

Upon the whole case, we are of opinion that there was no reversible error in any of the rulings of the trial court, and that the judgment must be affirmed.

*Affirmed.*