# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## J. R. WEBB v. UNITED STATES FIDELITY & GUARANTY COMPANY.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Timberlake & Nelson,* for the appellant.

*Apperson, Rush & Gentry,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This litigation, like the companion case of *E. B. Jones, Receiver, etc.* v. *United States Fidelity & Guaranty Company,* ante, page 349, 182 S. E. 560, decided at this term, arises out of the defalcations of George B. Venable while treasurer of Bath county.

The United States Fidelity & Guaranty Company, as surety on Venable's official bond, having settled for his shortages in his public funds, filed its petition in the receivership proceedings wherein the affairs of the Bank of Warm Springs, Inc., were being liquidated. The surety alleged, among other things, that the bank had aided and abetted Venable in diverting funds from his treasurer's account in that bank, and that it, the surety, having made good these shortages was entitled by subrogation to all rights of the State and county against the bank for the recovery of the amounts so diverted.

In addition to the six items which were the subject of

the opinion in *E. B. Jones, Receiver, etc.* v. *United States Fidelity & Guaranty Company, supra,* the petition alleged that the bank had, by honoring checks on Venable's treasurer's account, aided and abetted him in paying out of his fiduciary funds two personal debts due by him to J. R. Webb. One check was for $6,079, paid on October 17, 1930, and the other for $5,853 and paid on December 7, 1931.

The answer of the bank and the receiver alleged that the obligation to reimburse the surety for the Webb payments rested on Webb, if on anyone, and not on the bank. It prayed that the answer be treated as a cross-bill against Webb, that he be made a party defendant to the proceedings, and be required to refund to the bank any amount which it might be required to pay to the surety on account of the payments to Webb.

To the bank's cross-bill Webb filed a demurrer and answer in which he denied any legal obligation to refund to the bank, its receiver, the surety, or any other person, the money which he had received from Venable.

During the taking of the testimony before a special master, to whom the matter had been referred, it developed that the check dated December 7, 1931, for $5,853, payable to Webb, had been drawn on Venable's treasurer's account in the Bath County National Bank and not on the Bank of Warm Springs, Inc., as alleged in the surety's petition. Therefore, the trial court held that the Bank of Warm Springs, Inc., was not liable to the surety on this item.

For reasons which need not be stated, the lower court also disallowed the surety's claim against the Bank of Warm Springs, Inc., for the item of $6,079 paid Webb on October 17, 1930.

Thereupon, on April 16, 1934, the surety filed an amended petition against the Bank of Warm Springs, Inc., in which the allegations were made to conform to the proofs already taken. Webb was made co-defendant with the Bank of Warm Springs, Inc., to this amended petition,

and the surety prayed for judgment against him for the two items of $6,079 and $5,853 alleged to have been paid him out of the treasurer's fiduciary funds.

To the surety's amended petition Webb filed a demurrer and answer in which he alleged that: (1) The amended petition was bad for "misjoinder of parties" and for multifariousness; (2) the claim for the item paid him on October 17, 1930, was barred by the three year statute of limitations; and (3) he was not liable, in any event, on the merits for the return of either payment made to him.

By agreement of the parties all matters of law and fact were submitted to the court on the evidence theretofore taken.

Webb's demurrer alleging misjoinder and multifariousness was overruled and judgment was entered against him in favor of the surety for the sum of $5,853 paid to him on December 7, 1931. From this judgment Webb has been allowed an appeal by one of the justices of this court.

As to the item of $6,079 paid Webb on October 17, 1930, the lower court sustained his plea of the statute of limitations and entered judgment thereon in his favor. By a cross-assignment of error the surety brings under review the action of the court with respect thereto.

We think the trial court was right in sustaining Webb's plea of the statute of limitations with reference to the item paid him on October 17, 1930. Webb's liability to refund these two items is based upon his implied promise to refund the money illegally paid to him by Venable out of his fiduciary funds. For as Judge Keith said in *Baltimore & Ohio Railroad Co.* v. *Burke,* 102 Va. 643, 646, 47 S. E. 824, 825: "* * * if the defendant has money in his possession which in good conscience he ought to pay to the plaintiff, the law will imply a promise upon the part of the defendant to do his duty, and to pay the money * * * ." See also, *Langhorne* v. *McGhee,* 103 Va. 281, 288, 49 S. E. 44; *Schmidt* v. *Wallinger,* 125 Va. 361, 367, 99 S. E. 680; Burks' Pleading & Practice (3d Ed.), p. 181, sec. 93.

This being true the three year limitation prescribed by Code, section 5810, applies, and the claim is barred unless the suit was instituted against Webb within three years of the date of payment of the check on October 17, 1930.

It will be recalled that in the original petition filed by the surety on November 21, 1932, the Bank of Warm Springs, Inc., was the sole defendant and judgment was asked against it for the items which Venable had paid to Webb. No claim was therein asserted against Webb. It is true that in the answer and cross-bill of the bank, filed on January 21, 1933, Webb was brought into the proceedings on the allegation that he should refund to the bank any amount which it might be required to pay to the surety on account of the Webb transactions. But on April 16, 1934, the court entered the decree in which it held that the bank was not liable to refund to the surety the Webb items. Therefore, since the bank owed nothing to the surety, Webb owed nothing to the bank. He had won his case and was out of court. He was no longer a party to the proceedings.

In its amended petition, filed on April 16, 1934, the surety for the first time asserted a claim against Webb. It is elementary that where a new party is brought into a suit by an amended pleading, the suit must be deemed to have been commenced as to him at the time that he was so brought in. *Dorr's Adm'r v. Rohr,* 82 Va. 359, 365, 366, 3 Am. St. Rep. 106; Burks' Pleading & Practice (3d Ed.), pp. 367, 368, sec. 212; 17 Ruling Case Law, p. 824, sec. 187; 37 Corpus Juris, p. 1066, sec. 502.

It is clear, therefore, that when the surety filed its amended petition on April 16, 1934, against Webb, its claim for the item paid him on October 17, 1930, had been barred by the three year statute of limitations.

We think the lower court was right in overruling Webb's demurrer, wherein it was claimed that the surety's amended petition was bad for "misjoinder of parties" and multifariousness.

■ Under Code, section 6102, misjoinder of parties cannot be reached by demurrer. *Schmidt* v. *Wallinger,* 125 Va. 361, 366, 99 S. E. 680; *Virginia Hot Springs Co.* v. *Hoover,* 143 Va. 460, 464, 130 S. E. 408.

■ Nor do we find any merit in Webb's contention that the amended petition was multifarious because it alleged him to be liable for illegal payments made to him by Venable through both the Bath County National Bank and the Bank of Warm Springs, Inc. As has been pointed out, the original petition alleged that both of these diversions had been made from the Bank of Warm Springs, Inc., and not until after the evidence had been taken was the error discovered. The surety's amended petition conformed the allegations to the evidence and the parties were saved the delay and expense of instituting a separate suit to test Webb's liability on the Bath County National Bank item.

There is no claim that Webb was in any way prejudiced or injured by this procedure. On the contrary it was to his advantage, for if a separate suit had been instituted on the Bath County National Bank item, this would have necessitated the retaking of a large part of the testimony already before the court in the Bank of Warm Springs, Inc., receivership proceeding, the ultimate expense of which would have fallen on Webb.

What Judge Riely said in *Dillard* v. *Dillard,* 97 Va. 434, 436, 34 S. E. 60, 61, is peculiarly applicable here: "The courts, however, have found it impracticable to lay down any fixed rule applicable to all cases, but where the matters in controversy are not absolutely independent of each other, they consider what is just and convenient in the particular case; and if it will be more convenient to litigate and dispose of the matter in controversy in one suit, and this can be done without injustice to any party, the objection of multifariousness will not prevail."

We turn now to the facts with reference to the item of $5,853, for which the lower court held Webb liable to the surety.

On March 24, 1931, Venable borrowed $6,000 from Webb

on his personal note endorsed by H. H. Byrd. This loan Venable placed to his credit as treasurer in the Bank of Warm Springs, Inc., thus in part repaying the shortage in his State and county funds. When the loan to Webb became due in December, 1931, Venable paid it by giving Webb his check on his treasurer's account in the Bath County National Bank for $5,853, and the balance in cash. The check was as follows:

"GEO. B. VENABLE
"TREASURER, BATH COUNTY No. 83
"WARM SPRINGS, VIRGINIA

"HOT SPRINGS, VA., DEC. 7 - 1931

"Pay to the order of J. R. Webb . . . . . $5,853.00
The sum of $5,853 and 00 cts.

"FOR: Cash, Warrants and Checks

"To THE BATH COUNTY NATIONAL BANK
"HOT SPRINGS, VA.

(signed) "Geo. B. Venable,
"Treas."

In addition to the fact that the check showed on its face that it was drawn by Venable as treasurer of Bath county, it carried in the lower left-hand corner a notation "for cash, warrants and checks," thus making it appear to have been issued to Webb, in part, for county warrants which he might lawfully have acquired either as the payee thereof or by virtue of having cashed them for other payees at his store.

This check was delivered to Webb in person, endorsed by him, and paid at the Bath County National Bank out of Venable's public funds.

As we pointed out in *E. B. Jones, Receiver, etc.* v. *United States Fidelity & Guaranty Company, supra,* Venable was but the custodian of his official funds. These were the property of the State and county. He had no more right to use such funds to pay his personal debts to Webb than the Treasurer of Virginia would have had.

And, of course, Webb had no right to accept public funds for such a purpose.

If in paying Webb, Venable had said to him "I am giving you a check drawn on my treasurer's account in payment of my personal debt to you," there would be no question but that Webb had been put on notice that he was being paid out of public funds, yet the check which Venable gave him on December 7, 1931, spoke just as clearly of the fiduciary character of the funds on which it was drawn. Webb was put on notice by the large lettering on the check, "GEO. B. VENABLE, TREASURER, BATH COUNTY," as well as by the signature "Geo. B. Venable, Treas." Furthermore, Webb of course knew that Venable owed him nothing for "warrants" as stated on the face of the check.

In 26 Ruling Case Law, p. 1352, sec. 216, it is said: "Taxes collected by a deputy sheriff are the property of the State and county, and constitute trust funds in his hands, subject to all the rules of law governing such funds. Accordingly a person who receives a check with the words 'deputy sheriff' appended to the signature of the drawer is thereby affected with notice that the funds upon which the check is drawn were deposited by the drawer to his credit as deputy sheriff, and is put upon inquiry as to whether such funds belong to the drawer individually or to the State and county. If he fails to make such inquiry, and the funds in fact belong to the State and county, he takes the amount of the check impressed with a trust in their favor."

See also, 16 American & English Annotated Cases, p. 843, for a note collecting the cases on this subject.

If Webb had heeded the warning shown on the face of the check and made inquiry of Venable, he (Webb) might not have found out that Venable was short in his accounts with the State and the county, but he would have ascertained that he (Webb) was accepting public funds in discharge of Venable's personal debt to him. And this he, of course, knew was wrong.

 There is no merit in the contention of Webb that the check may have been paid out of Venable's personal funds, by way of commissions, in the account. It is undisputed that at the time this item was paid Venable was short in his accounts by a large amount. Hence, he had no personal funds by-way of commissions in his fiduciary account. *E. B. Jones, Receiver, etc.* v. *United States Fidelity & Guaranty Company, supra; Aetna Casualty & Surety Co.* v. *Board of Supervisors,* 160 Va. 11, 84, 85, 168 S. E. 617.

 The United States Fidelity & Guaranty Company, as surety on Venable's bond, having paid to the State and county the sum of $5,853 misappropriated by Venable and paid to Webb, is entitled by subrogation to recover said amount from Webb. *E. B. Jones, Receiver, etc.* v. *United States Fidelity & Guaranty Company, supra.*

The judgment of the lower court, being right, is accordingly affirmed.

*Affirmed.*

HUDGINS, J., dissenting.