LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Walter L. Covey et al.

v.

J. David Kimbrough

February 6, 1969

Ended File No. E-727

By JUDGE ROBERT LEWIS YOUNG

This suit grows out of a purchase by a real estate agent of property listed with him for sale and a prompt resale by him at a greatly enhanced price. On behalf of the defendant the text in 3 Am. Jur. 3d, Agency, Sec. 227, pp. 600, 601, is cited to the effect that ". . . such a transaction may be upheld if the agent acted in good faith and made a full disclosure to the principal . . . ," adding that the burden rests upon the agent to show this. The text in 12 C.J.S., Brokers, Sec. 42, pp. 102, 103, speaks of cases where the sale is with ". . . the full knowledge and consent. . ." of the principal, but adds that the rule prohibiting a selling broker from purchasing ". . . has been held to apply, although the sale is made at a fair price, or at a price and on terms fixed by the principal, and there is no actual fraud, or no injury to the principal . . . ," citing Williams v. Bolling, 138 Va. 244 (1923), and other cases. Our own Michie's Jurisprudence, Vol. 3, Brokers, Sec. 13, p. 523, states the rule as follows:

> It is a general rule that an agent cannot become the purchaser of the property of his principal. If he may do so at all, it must be when there has been no concealment on the

part of the agent, and after he has disclosed all the facts concerning the interest he is to take in the purchase so that his principal may act with full knowledge.

Also, on behalf of the defendant is cited the case of Bruce Ex'x. v. Bibb's Ex's., 129 Va. 45, at pp. 50, 51 (1921), to the effect that according to the better rule purchases by an attorney from his client are only prima facie fraudulent. From this it is argued that this is the rule applicable to all fiduciaries. As you gentlemen know, I recently had occasion in the case Jones v. Lewis, Law No. A-5528, which involved a purchase by an attorney, to follow the above authority and that a writ of error was refused in that case. I have not found a single Virginia case involving an agent, or broker, to sell in which this was held to be the proper rule. On the contrary, the case of Segar v. Edwards and Wife, 38 Va. (11 Leigh) 213 (1840), which involved an agent to sell, rejected the following argument made on behalf of the appellant (at pp. 223, 224):

> The judge of the court below appears to have been satisfied that the sale was fair in fact, yet he adjudged it fraudulent in law. In this he has gone beyond the decisions in Virginia, which have modified the doctrines of the English courts. Thus in England it is laid down as a general principle that persons acting in a confidential character are disqualified from purchasing . . .

I had thought that this case might be of sufficient interest to justify a review in detail of the law on the principal point involved, namely whether a sale like this is only prima facie voidable, or voidable at the election of the principal, apart from fairness. I find, however, that this has already been done by a much abler hand. See the opinion of the late Judge William A. Moncure, the elder, adopted as part of the opinion of our Supreme Court of Appeals in Williams v. Bolling, supra, at pp. 249 to 266, to which Sims, J., added in part, as follows (at p. 270):

The authority of the court for this allowance is found in the settled rule which is thus stated in 1 Mechem on Agency, sec. 1224, pp. 894-5: "The well settled and salutary principle that a person who undertakes to act for another shall not, in the same matter act for himself, results also in the other rule, that all profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or the violation of the duty of the agent if it be the fruit of the agency."

On behalf of the plaintiff the case of Bell v. Real Estate Corp, 206 Va. 853 (1966), is cited. While that was an action to recover back commissions paid, upon the ground that the agent had represented the buyer, as well as the seller, his supposed principal, the rule there would be the same as that here. It was there said that the amount of consideration, the amount of undue influence, and other like factors are wholly immaterial. See per Snead, J., at p. 859, quoting from Ferguson v. Gooch, 94 Va. 1 (1896). I find, therefore, that the law of this State is to the effect that if a real estate agent himself becomes the purchaser of property listed with him for sale and resells at a profit, the original owner may recover such profit. In another connection, Professor Williston says that this rule is "not inaptly termed 'prophylactic rule,' based upon the prevention rather than the remedying of fraud." Williston on Contracts, Rev. ed., Vol. 5, Sec. 1532, p. 4304.

While, to his credit, counsel for the defendant makes no point of this, I noticed that the attitude of several of the witnesses was "So what. It's done every day." As Justice Whittle, the elder, said in Syers & Co. v. Lester, 116 Va. 541, at p. 546 (1914), custom can never have validity where it controvenes a general rule of law. More specifically in point, perhaps, is the text in 3 Am. Jur. 2d, Agency, Sec. 226, p. 600,

citing the important case of <u>Hall</u> v. <u>Paine</u>, 224 Mass. 62, 112 N.E. 153 (1916), to the following effect:

> This is because the law does not trust human nature to be exposed to the temptations likely to arise out of such antagonistic duty and influence, and the rule is so deeply grounded that no custom or private usage can override it.

Should I be in error in my belief that the ancient salutary rule governing cases of this kind has never been modified in this jurisdiction, I might add that in my opinion the defendant dismally failed to show that the transaction was fair. I deem this, however, as was said in the <u>Bell</u> case, <u>supra</u>, an "immaterial" inquiry.

A draft of a decree giving judgment to the plaintiff in the amount of $4,217.66 may be presented. Plaintiff's computation overlooks the fact that the second sale price included a charge of $250.00 for examination of the title and other expenses.