# Richmond

CEMETERY CONSULTANTS, INC. v. GORDON H. WARE.

April 26, 1971.

Record No. 7403.

Present, All the Justices.

*Robert R. MacMillan* (*George H. Bowers, Jr.; Breeden, Howard & MacMillan*, on brief), for appellant.

*Allan G. Donn* (*W. Edward Hudgins, Jr.; Richard B. Spindle, III; Willcox, Savage, Lawrence, Dickson & Spindle*, on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

Involved here is the construction of a sales agreement dated March 10, 1964 wherein Cemetery Consultants, Inc. agreed to buy and Gordon H. Ware agreed to sell, for $200,076.05, all the shares of the capital stock of Rosewood Memorial Park, Inc., a cemetery corporation located in Virginia Beach. The agreement provides that "[t]his sale is made in accordance with the balance sheet prepared and submitted as of December 31, 1963, which said balance sheet discloses a corporate net worth of $56,959.45. The Seller guarantees that the net worth of said corporation is not less than $56,959.45 . . . ."

Clause 3(b) of the agreement provides that "[t]he Seller hereby assumes responsibility for any and all undisclosed liabilities of the corporation and agrees to save the Buyer harmless should any such liabilities be discovered."

At the time of sale the president, general manager and sole stockholder of Rosewood was Gordon H. Ware. Cemetery Consultants was organized to acquire Ware's capital stock in Rosewood. Subsequent to the acquisition appellant dissolved Rosewood and brought its assets into Cemetery Consultants, the parent corporation.

In 1966 the Internal Revenue Service asserted a deficiency claim against the Memorial Park property for taxes due by Rosewood for the years 1959 to 1963, both inclusive. When Internal Revenue Service Agents began examination of the books of Rosewood, Ware was notified and requested to negotiate with them pursuant to his agreement to assume responsibility for any and all undisclosed liabilities of Rosewood, and his agreement to save appellant harmless should any such liabilities be discovered. Appellee refused to do this.

Cemetery Consultants thereupon employed a tax attorney and an accountant to protect appellant from the deficiency tax claims being asserted. Appellant resisted the alleged federal income tax deficiency of $39,230.03 against Rosewood, and by negotiation, adjustment and compromise reduced the tax deficiency for the years involved to $15,628.25. The tax attorney was paid a fee of $725, the accountant was paid a fee of $2400, and the premium on the bond required by Internal Revenue Service to avoid a levy was $167.

The primary purpose of appellant's bill for a declaratory judgment was to obtain a construction of the provisions of the March 10, 1964 sales agreement. Numerous pleadings were filed and motions made. The evidence in the case is voluminous. It suffices to recite here that on January 16 and 20, 1969 the trial court heard evidence relating to the proper meaning and interpretation of Clause 3(b) of the agree-

ment, and on January 29, 1969 entered a declaratory decree which contains, in part, the following language:

> "It appearing to the Court that in the contract of March 10, 1964, the term 'undisclosed liabilities' when read as a part of the entire contract, did cover federal and state income taxes, the Court doth ORDER and ADJUDGE that Clause 3(b) of the Contract of March 10, 1964, covered federal and state income taxes for periods of years prior to the sale. . . ."

Thereafter, appellant filed its petition for further relief and sought a judgment against Ware for damages in the amount of the federal income tax deficiency due by Rosewood, accrued interest on the tax deficiency, bond costs, accountant's fee and reasonable attorney's fee. Further evidence was taken and on July 24, 1969 the trial court entered its final decree denying all relief prayed for by appellant. We granted Cemetery Consultants an appeal from this decree.

We find it unnecessary to detail further the evidence, or comment on the testimony of the numerous witnesses and the exhibits that were filed. It suffices to say that the record abundantly and clearly confirms the correctness of the recitation in the lower court's declaratory decree of January 29, 1969. The taxes in question were a liability and an unpaid obligation of Rosewood on March 10, 1964 when Ware sold the entire capital stock in this corporation to appellant. The amount of the taxes were then unknown, undetermined and undisclosed. The sale was made in accordance with appellee's balance sheet which disclosed a corporate net worth of $56,959.45. The seller contractually assumed any liabilities not disclosed on this balance sheet, and contractually agreed to save the buyer harmless should any such liabilities be discovered. Ware was therefore obligated for the payment of these taxes which were "undisclosed liabilities" under Clause 3(b) of the contract, and we so decide.

Appellee further resists the claim of appellant for damages upon the ground that Cemetery Consultants, Inc. will get an alleged tax benefit should it recover of appellee the amount of the tax deficiency and other items of damages. He argues that "[i]f a person who has been damaged by a breach of contract can mitigate his damages, he can't recover from the person who breached the contract. . . ."

Appellee contends that if appellant had continued the Rosewood Memorial Park, Inc. as a corporate entity, and completed the pro-

jected construction of the cemetery lots as was initially planned, there would have been no tax. The answer to this contention is that Cemetery Consultants was under no contractual obligation with Ware to maintain and continue Rosewood or to develop the lots in any specific manner. It purchased the entire capital stock of Rosewood for a definite and fixed sum, and there was no impediment, contractual or otherwise, to its liquidating that corporation.

The assessment of the taxes for the years 1959 through 1963 followed an audit by the Internal Revenue Service to determine if the actual cost claimed by Rosewood to develop the cemetery lots equaled the cost originally estimated by it for development. The audit developed that Rosewood had not expended in the development of the cemetery projects as much as it had originally estimated and for which it had received a tax benefit—hence the deficiency in taxes and the assessment. This is precisely the contingency which the parties contemplated in Clause 3(b) of the sales agreement of March 10, 1964. Appellee expressly assumed as primary obligor the liabilities not disclosed on the balance sheet of December 31, 1963, and he agreed to save appellant harmless should any such liabilities be discovered. The possibility of such a deficiency assessment existed here, as it does in practically every case involving a similar sale of corporate stock.

Ware argues that the amount of this tax deficiency should be added to Cemetery Consultants' cost basis for the acquired stock, and that such amount could be recovered by appellant in tax savings in future years. We find no merit in this argument. Appellant purchased all of the stock in Rosewood for $200,076.05. It did not assume the liability for undisclosed taxes and is resisting their payment. Even assuming *arguendo* that the amount of such taxes could be added as a part of the cost basis for the property, the tax benefit therefrom, if any, would necessarily depend upon the success achieved by appellant in its development and handling of the property, rulings of the Internal Revenue Service, and the federal tax laws. We know of no authority under which we could deny the appellant a recovery for appellee's breach of their contract and guaranty because of the possibility that in future years appellant might reap some tax benefit which cannot presently be ascertained and which is uncertain and indefinite, and may be nonexistent.

The judgment of the lower court is contrary to the law and the evidence and is reversed. Judgment will be entered for the appellant, Cemetery Consultants, Inc., against the appellee, Gordon H. Ware,

in the principal sum of $18,920.25, with 6% interest on $15,628.25, a part thereof, from January 26, 1968 until paid; with 6% interest on $2,400, a part thereof, from April 2, 1968 until paid; with 6% interest on $725, a part thereof, from March 11, 1968 until paid; and with 6% interest on $167, a part thereof, from August 1, 1968 until paid.

We deny appellant's claim for counsel fees in the instant case. In *Hiss* v. *Friedberg*, 201 Va. 572, 577, 578, 112 S. E. 2d 871, 876 (1960), Mr. Chief Justice Eggleston, speaking for this court, said:

"The rule is thus stated in Corbin on Contracts, *supra*, Vol. 5, § 1037, pp. 190, 191: 'Among the losses suffered by a plaintiff because of the defendant's breach of contract may be the expenses of litigation. Such expenses are losses suffered by reason of the defendant's breach; ***. They are affirmatively substracted [sic] from the plaintiff's wealth, and are not expected gains from performance of the contract that have been prevented. If the plaintiff can show that the defendant's breach of contract has caused litigation involving the plaintiff in the payment of counsel fees, court costs, and the amount of a judgment, and shows further that such expenditure is reasonable in amount and could not have been avoided by him by reasonable and prudent effort, he can recover damages against the defendant measured by the amount of these expenditures. The rule just stated does not deal with the cost of litigation with the defendant himself.' "

Consistent with our holding in the above case, we have allowed appellant to recover of appellee the amount that it expended for counsel, accountant and bond in connection with resisting the tax deficiency claim asserted by the Internal Revenue Service. Neither the necessity nor the reasonableness of these fees is an issue. To the extent that the final decree of the lower court denies appellant a recovery from appellee for attorney's fees incurred in the prosecution of the case under review it is affirmed.

*Affirmed in part; reversed in part; and final decree.*