Richmond

## LUCILLE T. OWEN, ET AL., ETC.

### v.

## WELDON D. SHELTON, ETC.

April 24, 1981.

Record No. 790564.

Present: All the Justices.

*James M. Minor, Jr. (Terrence R. Batzli; Minor, Forb & Batzli, P.C., on brief), for appellants.*

*Chandler A. Nelson (Don P. Bagwell; Tuck, Bagwell, Dillard, Mapp & Nelson, on brief), for appellee.*

POFF, J., delivered the opinion of the Court.

This is an appeal from an order granting summary judgment to a real estate broker in a suit brought by his principals seeking damages for breach of the brokerage contract and a refund of the brokerage commission. No evidentiary hearing was held, and we consider the

appeal upon the pleadings and an agreed statement of facts filed pursuant to Rule 5:9(c).

Among the assets of the estate of Lillie M. Thomasson, deceased, was a tract of land containing 422.64 acres. On October 1, 1976, Lucille Owen and Dorothy T. Estes, executrices of the estate, and C. E. Estes, testamentary trustee (collectively, the plaintiffs), engaged Weldon D. Shelton, individually and trading as Weldon D. Shelton Realty (the defendant), to act as their broker for the sale of the property. The brokerage contract required the plaintiffs to pay a commission "not to exceed five percent of the selling price, in the event the defendant was able to procure a purchaser . . . and consummate a sale."

As a result of the defendant's efforts, David A. Wilbourne and Sandra W. Wilbourne agreed to buy the property. The plaintiffs and the Wilbournes executed a sales contract on November 13, 1976 fixing December 13, 1976 as the date of closing. The Wilbournes were unable to arrange financing, and the sale did not close on that date. The plaintiffs then instructed the defendant "to collect interest from the purchasers, on the amount of the purchase price . . . for the period of time from December 13, 1976 . . . until such time as the transaction was actually consummated" and "not to close said transaction unless, and until, said interest was paid."

The Wilbournes and their attorney met with the defendant on April 19, 1977 to consummate the purchase. The attorney handed the defendant a letter and a cashier's check for $4,386.66, representing interest on the purchase price "for the period of time during which the consummation . . . had been delayed by said purchasers." The letter stated in part:

> "We are making this payment under protest in order to go ahead and close the transaction today. We deny that the sellers are entitled to any interest, and the purpose of this letter is to put them on notice that the interest is paid merely to expedite the closing. Mr. Wilbourne reserves his right to demand refund of this interest or to litigate the matter."

Without contacting the plaintiffs, the defendant accepted the cashier's check and the purchase price, delivered the plaintiffs' deed to the Wilbournes, and, retaining $9,400.00 as his commission, disbursed the proceeds of the sale. In July 1977, the Wilbournes sued the plaintiffs for recovery of the interest payment.

In their motion for judgment in the instant case, the plaintiffs

alleged that the defendant had "breached his contractual and fiduciary duties", that he had forfeited his commission, and that he was liable to them for "$3,820.59, in attorney's fees, costs and expenses" incurred in their successful defense of the Wilbourne suit, "all to the damage of the plaintiffs in the sum of $13,220.59, with interest thereon at the legal rate from April 19, 1977".

The parties filed briefs in support of their respective motions for summary judgment. Assigning no grounds on the record, the trial court granted the defendant's motion and dismissed the plaintiffs' suit.

On appeal, the plaintiffs contend that the defendant violated his contractual obligations and that they are thus entitled to recover the commission retained by the defendant.

> "[A] real estate broker occupies a fiduciary relation to his principal and so long as that relation continues is under a legal obligation, as well as a high moral duty, to give his principal loyal service."

*Olson* v. *Brickles*, 203 Va. 447, 450, 124 S.E.2d 895, 898 (1962).

As the plaintiffs say, one of the obligations a broker owes is "the duty to follow his principals' instructions." The defendant was instructed not to close the sale until interest accrued during the delay in closing had been paid. The statement of facts discloses that the defendant followed the letter, if not the spirit, of those instructions.

But a broker's obligation to his principal is broader than the duty to follow instructions. In *Mitchell* v. *Hughes,* 143 Va. 393, 403, 130 S.E. 225, 228 (1925), and again in *Duncan* v. *Barbour,* 188 Va. 53, 61-62, 49 S.E.2d 260, 264 (1948), we approved the following rule announced in *Veasey* v. *Carson,* 177 Mass. 117, 120, 58 N.E. 177, 177 (1900):

> "The general rule is well settled that a broker must act with entire good faith towards his principal, and he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the principal in his action, and, if he has failed to come up to this standard of duty, he cannot recover."

Hence, incorporated in every contract between a fiduciary and his principal is an obligation, imposed by law upon the fiduciary, to disclose anything known to him which might affect the principal's decision whether or how to act. And, like the duty to follow instruc-

tions, the duty to disclose continues "so long as [the fiduciary] relation continues". *Olson* v. *Brickles, supra.* The defendant contends that "the relationship of principal and agent . . . terminated on or about November 13, 1976, when the contract was executed between the buyer and the seller." We do not agree that the duty to disclose terminated at that point. Since the brokerage contract provided that the commission was due "in the event the defendant was able to procure a purchaser . . . and consummate a sale", the fiduciary relationship and the duties it entailed continued until the transaction was fully consummated.

When the defendant received the attorney's letter, he learned that the purchasers challenged the plaintiffs' entitlement to interest and that they reserved the right to litigate the question. As a real estate agent, presumably experienced, the defendant knew, or should have known, that these were circumstances which might influence his principals' decision whether to close. The defendant was also aware that, under the terms of his contract, failure to consummate the sale would defeat his right to a commission. So, with the purchase money in hand, he closed the sale, deducted a commission, and disbursed the proceeds, all without making the disclosure the law requires. We conclude that the defendant violated his fiduciary duty to the plaintiffs.

The price of a violation of the duty to disclose is forfeiture of the broker's right to compensation. *Duncan* v. *Barbour, supra,* 188 Va. at 63, 49 S.E.2d at 265. *See also Bell* v. *Real Estate Corp.,* 206 Va. 853, 860, 147 S.E.2d 277, 282 (1966). This rule illustrates the high regard the law holds for the fiduciary relationship, founded as it is upon one man's trust in the integrity and fidelity of another. The purpose of the rule is more prophylactic than remedial; it is applied, not to compensate the principal for an injury, but rather to discipline the fiduciary in the conduct of the office entrusted to him. *See Ferguson* v. *Gooch,* 94 Va. 1, 8-9, 26 S.E. 397, 400 (1896). Applying the rule here, we hold that the defendant forfeited his right to a commission.

The plaintiffs also claim damages for attorney's fees, costs, and expenses incurred in their successful defense of the Wilbourne suit.

Absent a contractual commitment, a successful litigant in an action *ex contractu* is not entitled to recover attorney's fees incurred in *that* action, and it appears that this rule was applied against the plaintiffs in the Wilbourne suit. But, we have held that "where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably in-

curred." *Hiss* v. *Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 876 (1960). *See also Cemetery Consultants, Inc.* v. *Ware*, 211 Va. 784, 180 S.E.2d 528 (1971).

Here, the plaintiffs' claim is based upon breach of the brokerage contract. As we have said, the defendant's duty to disclose was incorporated by operation of law in that contract. The defendant violated that duty and accepted the interest payment which he knew might, and which in fact did, become the subject of litigation. As the result of the defendant's acts and omissions, the plaintiffs were compelled to incur substantial expenses in defending the Wilbourne suit. We hold that the plaintiffs are entitled to recover those expenses as damages for breach of contract.

That is not to say that the plaintiffs are necessarily entitled to recover all they claim; under the rule in *Hiss*, litigation expenses are recoverable only to the extent they "are reasonable in amount and reasonably incurred."* The judgment will be reversed, the plaintiffs' motion for judgment will be reinstated on the docket, and the case will be remanded for further proceedings. Upon remand, as requested by the plaintiffs the trial court will determine the amount of expenses recoverable under the rule in *Hiss* and enter judgment for the plaintiffs for that amount and for the amount of the commission retained by the defendant.

*Reversed and remanded.*

HARRISON, J., dissenting.

The majority holds that the agent Shelton violated a fiduciary duty to his principals by failing to disclose the tender of a payment under protest. I disagree.

Shelton was employed by property owners to procure a purchaser for a tract of land and was successful in this undertaking. The sellers and buyers executed a contract of sale and scheduled a day for the closing. The buyers were unable to complete their arrangements for financing by the appointed time, and the closing date was postponed. The sellers had no objection to this but instructed Shelton to collect 7% interest on the purchase price from December 13, 1976, to the day of closing, and not to close until the interest was paid.

On April 19, 1977, the transaction was closed. Pursuant to his

---

* The plaintiffs claim "$3,820.59, in attorney's fees, costs and expenses" incurred in defense of the Wilbourne suit to recover the $4,386.66 interest payment.

instructions Shelton collected from the purchasers the entire purchase price of $188,000.00 and $4,386.66 representing interest. The buyers questioned their legal obligation to pay the interest and wrote Shelton that the interest was being paid under protest.

Payment under protest is an approved statutory method whereby one may perform in a manner demanded without prejudice to his rights. It is not a conditional or a qualified payment. Code § 8.1-207 concerns performance or acceptance under reservation of rights. In the official comment it is said:

> The section is not addressed to the creation or loss of remedies in the ordinary course of performance but rather to a method of procedure where one party is claiming as of right something which the others feels to be unwarranted.

Shelton did not contact the sellers to inform them that the interest was being paid under protest and proceeded with the closing. The majority concludes that Shelton's omission violated his fiduciary duty to the sellers. To discipline him, this court requires Shelton to forfeit his $9,400.00 commission, which he earned, and to pay the sellers' "litigation costs" incurred in defense of the buyers' action contesting the interest payment.

The facts of this case indicate that the majority's decision is harsh and unsound. In its opinion the majority concedes that Shelton followed the sellers' instructions to "the letter." While the opinion attributes the agent's failure to act to his awareness "that, under the terms of his contract, failure to consummate the sale would defeat his right to a commission," there is no factual basis supporting this statement. In fact there is not a scintilla of evidence in the record to support a conclusion that Shelton acted in bad faith or was prompted by greed when he failed to advise his principals that the interest payment was made under protest.

Arguably, it would have been the better part of wisdom for Shelton to have informed the sellers that the buyers questioned any obligation by them to pay interest and were paying it under protest. Even so, his failure to do this was a mistake in judgment, not a breach of a fiduciary duty. Shelton did not thereby compromise any rights of the sellers. Although the position asserted by the buyers was without merit, and was so decided by the lower court, it was a position which they had a legal right to assert, and neither the sellers nor their agent had any control over buyers' decision to do so.

It is doubtful that the sellers could have legally refused settlement

when the buyers paid the purchase price in full and tendered the interest under protest. However, it is clear that the buyers wanted the property and intended to close even if they did have to pay the interest. Had the sellers refused to accept the purchase price and interest because of the protest, it is certain that the buyers would have sought specific performance and tendered in court the purchase price in full and interest under protest. The sellers would still have been confronted with a law suit involving the interest payment. It is therefore obvious that what the agent did, or did not do, neither precipitated nor contributed to the litigation which the sellers were required to defend.

We have here a real estate transaction involving $192,386.60, of which only $4,386.66 was ever in controversy. And we have a claim for "litigation costs" of $3,820.59 to resolve this $4,286.66 law suit. By requiring Shelton to forfeit his commission, pay litigation costs, and pay the costs incident to the instant case, we exact of him a horrendous penalty. To do so where there is no evidence that he acted in bad faith, and where the prejudicial effect of his omission to his principals is at most minimal, is to "discipline" an agent without justification.

I would affirm the judgment of the court below.

THOMPSON, J., concurs in dissent.