Present:  All the Justices

FIDELITY NATIONAL TITLE
INSURANCE COMPANY
OF NEW YORK

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 980707                February 26, 1999

SOUTHERN HERITAGE TITLE
INSURANCE AGENCY, INC.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Philip L. Russo, Judge Designate

The dispositive question in this action for breach of contract is whether the trial court, during a bench trial, erred in sustaining, at the conclusion of the plaintiff's case-in-chief, the defendant's motion to strike the plaintiff's evidence on the issue of damages.  We hold there was no error and will affirm.

In January 1997, appellant Fidelity National Title Insurance Company of New York, the plaintiff below, filed this action against appellee Southern Heritage Title Insurance Agency, Inc., the defendant below.  In the motion for judgment, plaintiff alleged that it is a title insurance company authorized to transact business within the Commonwealth and that defendant is a Virginia corporation, maintaining offices in Virginia Beach, which is in the business of conducting real estate closings and issuing title insurance policies in connection with real property situated within this state.

The plaintiff further alleged that it and defendant "are parties to a title agency agreement bearing date of July 29, 1992," (hereinafter, the Agency Agreement) in which plaintiff's predecessor, Security Title and Guaranty Company, was a party. The plaintiff further alleged that one Shawn West (who was sued but is not a party to this appeal) was a licensed title insurance agent executing policies on behalf of defendant that were underwritten by plaintiff.

Plaintiff also alleged that, in April 1993, defendant issued plaintiff's policy of title insurance to the Bank of Sussex and Surry insuring the first lien position of the Bank's deed of trust on certain real property located in Isle of Wight County. The plaintiff further alleged that the grantor of the deed of trust was not the owner of the property securing the Bank's loan at the time of the recording of the Bank's deed of trust. The plaintiff also asserted that another lender, Farmers Bank of Windsor, had obtained a final declaratory judgment that its lien has priority over the Sussex Bank's lien.

The plaintiff further alleged that defendant and its agent West knew of the lien of Farmers Bank when they issued the title policy and "knew, or should have known, that the first lien position of [the Sussex Bank] was subject to challenge by the beneficiary of the competing deed of trust." In addition, plaintiff alleged defendant "failed to except to or pay the lien

2

of the competing deed of trust" when defendant issued plaintiff's title policy to the Sussex Bank, and that this failure was the proximate cause of the plaintiff's losses.

In conclusion, plaintiff asserted that various provisions of the Agency Agreement authorize recovery from defendant of plaintiff's losses, that is, "nominal damages" incurred by plaintiff "as a result of the breach of contract" by defendant, and attorney's fees incurred by plaintiff "in defending [the Sussex Bank]."  The plaintiff asserted that defendant is liable to plaintiff for the amount of plaintiff's losses "on the claim filed by [the Sussex Bank], since such claim was the natural result of [defendant's] failure to except to or pay the lien of the competing deed of trust when the [title policy] was issued."

In a grounds of defense, defendant generally denied that it was guilty of any breach of contract and denied it was indebted to plaintiff in any amount.  Specifically, defendant asserted that plaintiff was not a party to any "agency agreement" dated July 29, 1992 "and, therefore, lacks standing to bring this action."  Also, defendant asserted there is no "contract, statute or other authority" that permits plaintiff to recover attorney's fees.

In the bench trial conducted during two days in November 1997, the plaintiff presented the alleged Agency Agreement.  The seven-page, typed document entitled "Agreement," is between

3

"Security Title and Guaranty Company, a New York Corporation" labeled "Underwriter"; "Security Agency Services, Inc.," of Vienna, Virginia, labeled "Company"; and defendant, labeled "Policy Issuer." The document is signed only by West as president and secretary of defendant. The spaces for signatures on behalf of the other two parties are blank; the evidence failed to establish that the document ever had been signed by anyone for those parties.

The purported Agency Agreement generally provided that defendant was appointed, upon recommendation of the Company, "a non-exclusive policy issuing agent" authorized to execute and issue title policies in the name of the Underwriter covering property in the Commonwealth. The document specified certain duties of the Underwriter, such as, furnishing defendant "all regularly issued policy jackets." It provided in paragraph 2(D): "Underwriter shall defend at its own expense all actions and pay all losses under policies issued pursuant to this Agreement, subject to the right of reimbursement in paragraph 5 hereof." Paragraph 5, to be discussed in more detail later, is headed "Division of Loss and Loss Expense."

The purported Agency Agreement imposed certain duties upon the defendant, the Policy Issuer. Among those duties was the obligation of defendant to "issue title insurance policies, endorsements, binders and commitments according to recognized

4

underwriting practices and the rules and instructions given by Underwriter . . . ."  All title policies were to "be based on a written report of title resulting from a search and examination of those public records, surveys and inspections relevant to the insurance afforded by such policies."  Each title policy was to "correctly reflect the status of title with appropriate exceptions as to liens, defects or encumbrances disclosed by the search of title."

During its case-in-chief, plaintiff offered evidence tracing its corporate history to establish that it was the successor in interest to the "Underwriter" named in the alleged Agency Agreement.  The plaintiff also presented testimonial and documentary evidence in an attempt to establish that, although not executed by all the parties, the Agreement was enforceable against defendant because defendant had performed under it.  The plaintiff sought to show that West issued the title policy to Sussex Bank based on an improper examination of the land records.  The plaintiff claimed defendant should have been alerted to the fact that the Sussex Bank deed of trust did not enjoy priority over the Farmers Bank deed of trust thus exposing plaintiff to a claim by Sussex Bank under the title policy.  The plaintiff also sought to prove damages for which it claimed the Agency Agreement permitted recovery.

In sustaining defendant's motion to strike the evidence, the trial court ruled the purported contract was unenforceable due to lack of mutuality of obligation because only West had signed it. In addition, the court ruled "that the damages have not been proven to my satisfaction." Thus, the court dismissed the action with prejudice.

We awarded plaintiff this appeal from the January 1998 judgment order. The appeal was limited to consideration of the questions whether plaintiff established the existence of a contract between the parties, the terms of the contract, and a breach thereof; and whether plaintiff established damages sustained as a direct and proximate result of the breach of contract.

We will assume, without deciding, that the plaintiff established the existence of a contract between the parties on the terms set forth in the Agency Agreement, and that it proved a breach thereof. Thus, we shall agree with the plaintiff, for purposes of this discussion, that the trial court erred in striking the evidence on the issue of liability. This brings us to the issue of damages.

On appeal, the plaintiff contends it "provided evidence of damages of at least $99,720.16 as a direct and proximate result of the breach of contract on the part of Southern Heritage." The plaintiff argues that its damage claim, consisting of

attorney's fees and costs, is based on the Agency Agreement.
Plaintiff says the trial court apparently was "confused" and
thought that such claim was based upon the provisions of the
title policy issued to the Sussex Bank.

Specifically, the plaintiff mainly relies upon paragraphs
2(D) and 5 (A), (B), and (D) of the Agreement.  As we have said,
2(D) provides that plaintiff shall defend all actions and pay
all losses under policies issued by defendant under the
Agreement, "subject to the right of reimbursement in paragraph
5."

Paragraph 5, as pertinent, provides:

"Division of Loss and Loss Expense

A.  On each loss under a title policy issued
pursuant to this Agreement not due to Policy Issuer's
negligence or fraud, Policy Issuer shall be liable to
Underwriter for the first Two Thousand Five Hundred
($2,500.00) of such loss.  The term loss shall include
the amount paid to or for the benefit of the insured
as well as loss adjustment expense including cost of
defending the claim resulting in the loss.

B.  On each loss due to the negligence, fraud, or
intentional act or omission of Policy Issuer or its
employees, representatives, or agents, Policy Issuer
shall be liable to Underwriter for the entire amount
of such loss.  Negligence as the term is used herein,
includes, but is not limited to, the failure of the
title plant, failure to discover or report any
instrument of record affecting title, violation of
escrow instructions[,] failure to follow Underwriter's
instructions, and the failure to prepare a title
policy in a manner that properly reflects any
instrument contained in the search of a title.

. . . .

7

D. Policy Issuer agrees that it is liable to Underwriter for all loss suffered by Underwriter by reason of the negligence, fraud, error, omission or other acts of Policy Issuer."

Plaintiff contends that "the Agency Agreement imposed, as a contractual obligation, a standard of care and conduct upon Southern Heritage to protect the interests of Fidelity National." Therefore, the argument continues, the Agreement specifically provided for reimbursement of expenses incurred as a result of defendant's negligence. Plaintiff contends the evidence showed defendant "did not comply with its contractual obligations in preparing and issuing the Policy," with the result that plaintiff and its insured were exposed to claims.

During the trial, the plaintiff presented the following evidence to support its damage claim. In November 1993, after the title policy was issued in April 1993, the plaintiff received a notice of claim on behalf of the Sussex Bank. The plaintiff then retained an attorney to "assist in the investigation of the claim and the legal research involved."

Ultimately, Farmers Bank, claiming a lien superior to Sussex Bank's interest, filed a chancery suit in the Circuit Court of Isle of Wight County naming Sussex Bank as a defendant. Plaintiff selected its previously retained attorney to represent the Sussex Bank in the suit. The evidence at the present trial showed that plaintiff made the selection, and incurred

8

attorney's fees and expenses, according to duties imposed by the title policy.

The evidence also showed that plaintiff paid the following amounts for which it claims reimbursement: For services rendered to plaintiff before the suit was filed against the Sussex Bank, attorney's fees and expenses of $15,934.09; for the defense of the suit against the bank, fees and expenses of $47,742.40; for services rendered in connection with a legal malpractice claim filed on behalf of the Sussex Bank against an attorney who had represented the bank in connection with its acquisition of the security interest in the subject property, fees and expenses of $30,771.27.

The evidence showed that plaintiff retained additional counsel because of questions raised about the underlying title insurance. At the time of trial, plaintiff had paid $5,272.40 to additional counsel.

Moreover, counsel says, defendant's breach of contract caused it to be subject to liability under the title policy up to the policy limits of $396,566.15 for the loss, if any, sustained by the Sussex Bank. The evidence showed, however, that at the time of trial plaintiff had made no payment under the policy to anyone on behalf of the Bank.

9

Under these circumstances, the plaintiff concludes, the trial court erred in granting the motion to strike at the close of the plaintiff's case.  We do not agree.

The plaintiff maintains that under paragraph 5 defendant "was subject to liability for 'loss and loss expense', defined therein to include 'the amount paid to or for the benefit of the insured as well as loss adjustment expense including cost of defending the claim resulting in loss.'"  This provision, plaintiff contends, authorizes recovery of attorney's fees and related expenses.  A plain reading of paragraph 5 fails to support this contention.

The language emphasized by plaintiff is found only in subparagraph (A) of paragraph 5.  That subparagraph deals with "each loss . . . not due to Policy Issuer's negligence or fraud."  This is not such a case.  This is an action based upon, in plaintiff's words, defendant's negligence in failing to meet the standard of care and conduct imposed as a contractual obligation in the Agency Agreement.

The claim in this action is governed by subparagraphs (B) and (D) of the Agreement, that is, loss due to defendant's "negligence," as defined in (B), or defendant's acts or omissions, mentioned in (B) and (D).  But the definition of the term "loss" as meaning "loss adjustment expense" is not included in and does not apply to those subparagraphs.  Hence, the

10

Agreement does not provide for recovery of attorney's fees and expenses in this contract action based upon defendant's alleged negligent acts of commission or omission.

Alternatively, plaintiff contends that it is entitled to recover attorney's fees and expenses even though the Agreement does not specifically so provide. The plaintiff says this Court has "long held that attorneys' fees and costs incurred as a result of the actions of another party may be recovered under certain circumstances," citing Owen v. Shelton, 221 Va. 1051, 277 S.E.2d 189 (1981), and Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871 (1960).

In Hiss, followed in Owen, we noted the general rule that, absent any applicable contractual or statutory provision, attorney's fees and litigation expenses incurred by a plaintiff in litigation of its claim against a defendant, aside from usual taxed court costs, are not recoverable as an item of damages in contract actions. Also, we pointed out that attorney's fees and other expenses incurred in former litigation between the same parties are not recoverable in a subsequent action. Hiss, 201 Va. at 577, 112 S.E.2d at 875.

In Hiss, however, we applied an exception to the general rule. The exception, relied upon by the plaintiff here, provides that when a defendant's breach of contract has forced a plaintiff to maintain or defend a suit with a third person, the

11

plaintiff may recover in a subsequent action against the defendant as damages for breach of contract the reasonable counsel fees incurred in the former suit involving the third party. Id., 112 S.E.2d at 875-76. Accord Owen, 221 Va. at 1055-56, 277 S.E.2d at 192. The reason underlying the exception is that losses suffered by the plaintiff because of defendant's breach of contract may include the expenses of litigation with the third party, and these expenses are properly recoverable from the defendant. The exception does not deal with the cost of litigation with the defendant itself. Hiss, 201 Va. at 577-78, 112 S.E.2d at 876.

The record in this appeal does not support application of the exception. During trial and on brief, the parties alluded to numerous lawsuits stemming from this dispute, many of which are not properly documented in this record. Based on the record before us, it does not appear that plaintiff as a party litigant maintained or defended a suit with a third party as "a direct and necessary consequence," id. at 579, 112 S.E.2d at 876, of the breach of the purported Agency Agreement, so as to entitle plaintiff to recover attorney's fees in this action as damages for breach of contract. See State Farm Fire and Cas. Co. v. Scott, 236 Va. 116, 122, 372 S.E.2d 383, 386-87 (1988).

For example, the plaintiff was not a party to the chancery suit in Isle of Wight County that was filed by Farmers Bank

12

against Sussex Bank, and others.  Indeed, the plaintiff's duty to defend Sussex Bank in that litigation arose from the provisions of the title policy, not the Agency Agreement or its purported breach.  In addition, the plaintiff was not a party to the attorney malpractice action brought by the Sussex Bank for alleged negligence in connection with the title search.  Also, plaintiff instituted, shortly before filing the present action, a federal suit against Sussex Bank to determine coverage under the title policy.  Insurance coverage is determined, of course, by the terms of the insurance contract, not a separate agency agreement.

Consequently, the judgment below will be

Affirmed.
