COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Chaney and Raphael
Argued at Winchester, Virginia

PUBLISHED

MINTBROOK DEVELOPERS, LLC

v.      Record No. 0474-22-4

GROUNDSCAPES, LLC AND
  FOREST GOLD, LLC

FOREST GOLD, LLC, GRACE LIM AND
  JAMES LIM

v.      Record No. 0499-22-4

MINTBROOK DEVELOPERS, LLC

OPINION BY
JUDGE STUART A. RAPHAEL
DECEMBER 20, 2022

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Stephen E. Sincavage, Judge

David W. Shreve (James H. Higginbotham, II, on briefs), for
Mintbrook Developers, LLC.

James P. Downey (James P. Downey, P.C., on briefs), for Forest
Gold, LLC, Grace Lim and James Lim.

No brief or argument for Groundscapes, LLC.

We consider here whether an agreement to extend Lafayette Avenue to Route 28—in an

area of Fauquier County called Bealeton—required Mintbrook Developers, LLC or Forest Gold,

LLC to perform certain road improvements on Route 28 that were required by Fauquier County

and by the Virginia Department of Transportation (VDOT).  We agree with the trial court that

Mintbrook shouldered that obligation.  But we disagree with the trial court's ruling refusing to

award attorney fees incurred by Forest Gold and its principals.  We therefore affirm in part and

reverse in part, remanding the case to the trial court to determine an appropriate fee award.

BACKGROUND

This case comes to us following a bench trial in which the circuit court ruled that Mintbrook, not Forest Gold, was responsible for the Route 28 road improvements at issue. On that question, we review the facts in the light most favorable to Forest Gold, the prevailing party below. *See Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022).[1]

In 2003 and 2007, Grace and James Lim acquired about 8.3 acres in Bealeton, where Route 28 (running southwest-northeast) intersects with Highway 17 (running north-south). The Lims' property was in the northwest quadrant of that intersection. The Lims believed that the property would be ideal for a gas station or convenience store. The project required Fauquier County to rezone the property, a process that took until 2015.

Mintbrook owned land to the north of the Lims' property and west of Highway 17. Grace Road runs southwest to northeast (parallel to Route 28), dividing the Lims' property to the south from Mintbrook's to the north. Mintbrook developed its property into residential lots and an apartment complex for seniors. Lafayette Avenue, running north-south, divides the residential lots to the west from the apartment complex to the east.

As originally laid out, Lafayette Avenue extended south of Grace Road, but not all the way to Route 28. As part of their development plans, the Lims acquired the strip of land needed to extend Lafayette Avenue to Route 28. Both Mintbrook and the Lims stood to benefit from completing that connection. The Lims needed it for their development plans. And without that connection, there would be no southern access from Route 28 to Mintbrook's residential lots or to

---

[1] Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by the parties. To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions. *See, e.g.*, *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022).

its apartment complex; the access would have been from the east, where Grace Road meets Highway 17.

In 2014, Mintbrook proposed that, if the Lims dedicated the road parcel, Mintbrook would extend Lafayette Avenue to Route 28. The parties exchanged various drafts of an agreement. In the final "Development Agreement," entered into as of April 14, 2014, Mintbrook agreed to extend Lafayette Avenue to Route 28 and to complete the interconnection between the two roads.

When the parties signed that agreement, they did not know what requirements would be imposed by VDOT as a condition of building the road extension and intersection. One possibility that later emerged was a traffic circle or "roundabout." The ultimate determination by VDOT would depend on the outcome of a traffic-impact analysis. Mintbrook also did not know what improvements would be built on the Lims' property.

In 2015, Fauquier County approved the commercial rezoning of the Lims' land. The rezoning required the construction of improvements to connect Lafayette Avenue to Route 28, the details of which would be based on the traffic study.

In 2017, Mintbrook sent the Lims what Mintbrook called a "comfort letter," reassuring them that Mintbrook intended "to plan, permit and construct" the extension of Lafayette Avenue to Route 28. Mintbrook noted that it was "required to update our traffic study . . . since this road segment was not part of Mintbrook's original plan," and Mintbrook would "then get an access permit from VDOT." Mintbrook's principal, Russell Marks, admitted at trial that Ms. Lim would "understand from this letter that we were going to do what was necessary for this road segment."

In 2018, the Lims conveyed their property to Forest Gold, a limited liability company that they had formed. The parties subsequently treated Forest Gold as succeeding to the interests of the Lims under the Development Agreement, even though Forest Gold had not signed the Development Agreement. At trial, Mintbrook recognized "Ms. Lim and Forest Gold" as "one in the same."

In 2019, after the traffic study was completed, Fauquier County approved a Public Improvement Plan (PIP) for the project that required the construction of specific roadway improvements on Route 28 at the planned intersection with Lafayette Avenue. *See* Joint Exhibit 8. The parties did not make a clear record about exactly what those improvements entailed. In opening statements and closing argument, Mintbrook's counsel referred to the required improvements as including acceleration and deceleration lanes. Because the precise details of the roadwork do not affect the outcome here, we assume that Mintbrook's characterization is correct.[2]

Mintbrook refused to perform that work, which Mintbrook claimed exceeded the scope of its obligations under the Development Agreement. Mintbrook asserted that it agreed to build the intersection using a "flare-out" design shown on Exhibits A and B to the 2014 Development Agreement, not the more elaborate requirements specified in the 2019 PIP.

As a result, Forest Gold contracted with Groundscapes, LLC to perform the required roadwork. Groundscapes charged a flat fee of $407,479.71, for which Forest Gold made an initial payment of $70,000. The Lims, through a related entity, posted the bond required by VDOT to secure performance of the PIP work.

When Forest Gold failed to pay Groundscapes, Groundscapes sued Forest Gold for the balance due: $337,479.71. Forest Gold filed a third-party complaint against Mintbrook, claiming that Mintbrook was responsible for the work and had to indemnify Forest Gold. Mintbrook craved oyer of the contract, and Forest Gold filed the Development Agreement with the court. Forest Gold

---

[2] The scale of many of the engineering drawings, including Joint Exhibit 8, is so small as to make the print and descriptions unreadable. We commend the parties for cooperating to submit joint exhibits. But we commiserate with the trial judge who remarked that one such drawing was "just a bunch of black ink on the paper for me right here," and "if you all think this is important, I'm going to need something better to look at." We remind litigants that "the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012).

and the Lims then filed an amended third-party complaint against Mintbrook, seeking indemnification and attorney fees.

After a two-day bench trial, the circuit court found that Forest Gold breached its contract with Groundscapes and was liable for the outstanding balance, $337,479.71. The court also held that the Development Agreement unambiguously required Mintbrook to perform that work, making Mintbrook liable to Forest Gold and the Lims in the same amount. The court, however, denied Forest Gold's claim for attorney fees. While the indemnification provision of the Development Agreement provided for the recovery of attorney fees, Forest Gold had waived its fee claim under Rule 3:25, the court reasoned, because the amended third-party complaint did not plead that the indemnification provision was the basis for the fee claim. The court acknowledged that this was a "technicality" but said that "we live in a world of technicalities when we are dealing with the law."

Mintbrook appealed the adverse judgment against it, and Forest Gold and the Lims appealed the trial court's ruling denying them attorney fees.

ANALYSIS

A. *The Development Agreement unambiguously required Mintbrook to perform the disputed work.*

We begin with Mintbrook's claim that the trial court erred in finding that the Development Agreement unambiguously required Mintbrook to perform the Route 28 work that was required by the 2019 PIP. "Whether contractual provisions are ambiguous is a question of law and not of fact, and we do not on appeal accord the circuit court's resolution any deference since we are afforded the same opportunity to consider the provisions." *Nextel Wip Lease Corp. v. Saunders*, 276 Va. 509, 515 (2008). "Contractual provisions are ambiguous if they may be understood in more than one way or if they may be construed to refer to two or more things at the same time. The ambiguity, if it exists, must appear on the face of the instrument itself." *Id.*

at 516 (citation omitted). To resolve that question, "we conduct a de novo review." *Id.* at 515-16. By contrast,

> [w]e give the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict. Those factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them.

*Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006).

Paragraph 1(G) of the Development Agreement defined the "Road Segment" work that Mintbrook needed to perform:

> "Road Segment" means the portion of Lafayette Avenue that lies within the Road Parcel and extends from the boundary of the Mintbrook Property through the Road Parcel and joins with Route 28. Notwithstanding the foregoing, the intent of this Road Segment language is that Mintbrook shall, at Mintbrook's sole cost and expense, *construct the entirety of Lafayette Avenue, including but not limited to*, (i) all road improvements required at Lafayette Avenue's intersection with Route 28 per the approved Mintbrook Code of Development Site Plans, the relevant sections of which are detailed in Exhibits "A" and "B", and (ii) *all measures required to release all bonds and to dedicate Lafayette Avenue to the Virginia Department of Transportation (VDOT)*.

(Emphasis added.) Mintbrook contends that, under the Mintbrook Code of Development Site Plans and Exhibits A and B—referenced in romanette (i)—Mintbrook agreed to connect Lafayette Avenue to Route 28 using a flare-out design, but not to perform additional roadwork like the construction of acceleration and deceleration lanes. On the other hand, Forest Gold relies on romanette (ii), which required Mintbrook to construct everything necessary for VDOT to accept the dedication of the extension of Lafayette Avenue to Route 28 and to cause all bonds to be released.

We agree with the trial court that romanette (ii) unambiguously required Mintbrook to perform the broader scope of work. Romanette (ii) required Mintbrook to perform "all measures required to release all bonds and to dedicate Lafayette Avenue." VDOT's representative testified

that the roadwork performed by Groundscapes to connect Lafayette Avenue to Route 28 was the work required by the 2019 PIP. He further testified that VDOT would not have accepted the road dedication and would not have released the performance bond if that work had not been completed. Indeed, Mintbrook does not contest the trial court's factual finding—amply supported by the record—that "the evidence is clear . . . that[,] without that work[,] Lafayette Avenue would not have been dedicated."

We disagree with Mintbrook that paragraph 1(G) is ambiguous in defining the Road Segment work. Mintbrook focuses almost exclusively on the more limited Route 28 work described in romanette (i), which incorporated the flare-out design anticipated in the "Mintbrook Code of Development Site Plans, the relevant sections of which are detailed in Exhibits 'A' and 'B'" of the Development Agreement. But paragraph 1(G) makes clear that "the intent of this Road Segment language is that Mintbrook shall, at Mintbrook's sole cost and expense, construct the entirety of Lafayette Avenue, *including but not limited* to" the work described in romanette (i) "*and*" in romanette (ii). (Emphasis added.) It does not matter that Mintbrook did not know in 2014 what type of improvements VDOT would ultimately require at the intersection of Lafayette Avenue and Route 28. Whatever that might be, Mintbrook promised in romanette (ii) to construct "all measures required to release all bonds and to dedicate Lafayette Avenue" to VDOT.

Mintbrook argues that we should look past that language to find the parties' true intent from their exchange of an earlier version of the agreement. In March 2014, the Lims sent Mintbrook a draft that set out Mintbrook's obligations in greater detail, requiring Mintbrook to construct "all improvements as required along Route 28 *including turn lanes, accel/decel lanes, medians and striping*." (Emphasis added.) Mintbrook insists that it "took out all of this

language." It argues that its rejection of that text shows that the parties did not intend for Mintbrook to perform the greater scope of work.

Mintbrook's argument, however, is barred by the parol-evidence rule, "sometimes called 'the "plain meaning" rule.'" *Worsham v. Worsham*, 74 Va. App. 151, 165 (2022) (quoting *Berry v. Klinger*, 225 Va. 201, 208 (1983)). When, as here, "the contract is unambiguous, extrinsic evidence of prior or contemporary discussions, understandings, or agreements, is inadmissible 'to contradict or vary the plain language of the instrument itself.'" *Id.* at 165-66 (quoting *Utsch v. Utsch*, 266 Va. 124, 130 (2003)). Instead, "the writing [is] the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement." *Id.* at 165 (alteration in original) (quoting *Jim Carpenter Co. v. Potts*, 255 Va. 147, 155 (1998)). As in *Worsham*, "[n]o one has suggested" here that the Development Agreement "is anything but a complete integration" of the parties' agreement. *Id.* at 166. "For a complete integration," the parol-evidence rule bars extrinsic evidence, whether it is offered to contradict or to "'add to or explain the terms of a complete, unambiguous, unconditional, written instrument.'" *Id.* at 166 (quoting *Godwin v. Kerns*, 178 Va. 447, 451 (1941)). The Development Agreement also contains an integration clause providing that the document reflects "the entire agreement among the parties" and "supersede[s] all other prior agreements and understandings, both written and oral." Russell Marks, Mintbrook's representative, acknowledged that clause at trial, agreeing that the relevant agreement is "the one that got signed, and not any prior drafts." "Here, the parol evidence relied on . . . directly contradicts" the parties' final agreement. *Worsham*, 74 Va. App. at 173 (alteration in original) (quoting *Anden Grp. v. Leesburg Joint Venture*, 237 Va. 453, 458 (1989)). Thus, the earlier draft cannot be considered.

In short, the trial court correctly ruled that Mintbrook was responsible for the Route 28 improvements. We therefore affirm the judgment in favor of Forest Gold.[3]

    *B. The trial court erred in denying attorney fees.*

"The general rule in this Commonwealth is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 92 (1999). Forest Gold bases its fee claim on paragraph 2(D) of the Development Agreement, where Mintbrook promised to "[i]ndemnify and save harmless [the Lims] from and against any and all suits, actions, legal proceedings, claims, demands, damages, liability, costs and expenses (including attorney's fees) arising out of or in connection with the Performance of Road Segment Work due to . . . breach of this Agreement . . . ."

In their separate appeal, Forest Gold and the Lims argue that the trial court erred in finding that they waived their attorney-fee claim under Rule 3:25. "A lower court's interpretation and application of the Rules of the Supreme Court . . . presents a question of law that we review *de novo*." *Cousett v. Commonwealth*, 71 Va. App. 49, 57 (2019); *see also LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012) (same).

Rule 3:25 requires that "[a] party seeking to recover attorney fees must demand them in the complaint . . . , counterclaim . . . , third-party pleading . . . , or in a responsive pleading." Rule 3:25(b).[4] "The demand must identify the basis upon which the party relies in requesting

_____

[3] Although the Lims (not Forest Gold) signed the Development Agreement, Mintbrook has not challenged that the judgment was properly entered in favor of Forest Gold (not the Lims). *See* Rule 5A:18.

[4] The Supreme Court promulgated Rule 3:25 in 2009. *See* Order (Va. Feb. 27, 2009), https://www.courts.state.va.us/courts/scv/amendments/2009_0227_3_25_rule.pdf. The rule was amended after the trial here, changing "attorney's fees" to "attorney fees." *See* Order (Va. June 13, 2022), https://www.courts.state.va.us/courts/scv/amendments/rules_1_1a_etc.pdf. Because the 2022 amendment was purely stylistic, we quote the current version of the rule. *See Worsham*, 74 Va. App. at 178 n.9 (identifying "attorney fees" as the preferred usage and noting that "[t]he Rules of the Supreme Court of Virginia repeatedly use *attorney fees*").

attorney fees." *Id.* The "failure of a party to file a demand as required by this rule constitutes a waiver by the party of the claim for attorney fees, unless leave to file an amended pleading seeking attorney fees is granted under Rule 1:8." Rule 3:25(c).[5] Subsection (d) provides that "[u]pon the motion of any party, the court must, or upon its own motion, the court may, in advance of trial, establish a procedure to adjudicate any claim for attorney fees."[6]

Forest Gold insists that its pleading met the disclosure requirements of Rule 3:25(b). After Mintbrook craved oyer of the contract, Forest Gold and the Lims filed the Development Agreement with the court. Their amended third-party complaint, filed thereafter, recited that "Mintbrook's contract with the Lims expressly provides that it will hold them harmless and indemnify them from claims such as the one now being asserted by Groundscapes." Am. Third-Party Compl. ¶ 12. It added that "Mintbrook's liability is in the sum of $407,479.71, or such other amount necessary to indemnify Forest Gold for its damages arising from Mintbrook's breach of contract, plus interest, costs, and attorney's fees." *Id.* ¶ 16. Forest Gold argues that the parties' conduct in the trial court also shows that Mintbrook knew that the fee claim was based on the indemnification provision in the Development Agreement.[7] Mintbrook responds that,

---

[5] *See Graham v. Cmty. Mgmt. Corp.*, 294 Va. 222, 229 (2017) ("The requirement of Rule 3:25 to bring attorney's fee claims is consistent with the fundamental tenets of Virginia practice that no litigant may recover on a right not pled, and that '[t]he basis of every right of recovery under our system of jurisprudence is a pleading' setting forth the basis for granting the relief sought." (alteration in original) (footnote omitted) (quoting *Allison v. Brown*, 293 Va. 617, 626 (2017))).

[6] Rule 3:25 was recommended by the Boyd-Graves Conference to improve the procedures for handling attorney-fee claims and to reduce potential traps for "unwary practitioners." *See 2007 Boyd-Graves Study of Attorney's Fee Claims in Civil Litigation* 1, http://www.vba.org/associations/11069/files/BGAttorneyFees.pdf.

[7] Six months before trial, Forest Gold and the Lims tendered an attorney-fee affidavit and expert disclosure about the reasonableness of their attorney fees in the litigation. In response, Mintbrook advised opposing counsel that it would not contest the attorney rates in question. When Forest Gold's counsel said in his opening statement at trial that the attorney-fee claim was based on the indemnification provision, Mintbrook voiced no objection. Mintbrook did not raise

while the amended third-party complaint mentioned the parties' contract, sought indemnification, and requested attorney fees, the pleading did not explicitly say that the attorney-fee claim was based on paragraph 2(D) of the Development Agreement. To Mintbrook, the pleading failed to identify "the *basis* upon which the party relies in requesting attorney fees." Rule 3:25(b) (emphasis added).

We find it a close question whether the amended third-party complaint—viewed in isolation—adequately pleaded that the attorney-fee claim was based on paragraph 2(D) of the Development Agreement. A reasonable litigant in Mintbrook's position could have thought there were three possibilities: the attorney-fee request was boilerplate; the fee request was based on the indemnification provision in the Development Agreement; or the fee request invoked the third-party-litigation exception to the general rule precluding the recovery of attorney fees.[8]

At oral argument, however, Mintbrook's counsel acknowledged, with commendable candor, that he knew that Forest Gold and the Lims "were seeking attorney's fees because . . . in the motion craving oyer the contract was produced and the contract is the basis for attorney's fees . . . . I was aware of that from the beginning." He added that Mintbrook elected not to conduct discovery on the fee claim because it could undermine Mintbrook's ability to argue that the fee claim was forfeited under Rule 3:25.

---

a Rule 3:25 objection until Forest Gold offered its attorney-fee affidavit toward the close of its case-in-chief. Mintbrook did not claim unfair surprise or prejudice, nor was it "contesting the amount" of the fees. Mintbrook claimed only that Rule 3:25 required the third-party complaint to plead the indemnification provision as the basis for fee shifting.

[8] *See Prospect Dev.*, 258 Va. at 92 ("We have held that 'where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred.'" (quoting *Owen v. Shelton*, 221 Va. 1051, 1055-56 (1981))). Under this exception, however, the plaintiff cannot recover attorney fees for "the cost of litigation with the defendant itself." *Fid. Nat. Title Ins. Co. v. S. Heritage Title Ins. Agency, Inc.*, 257 Va. 246, 254 (1999).

"While concessions of law are not binding on an appellate court, we may accept concessions of fact," *Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020), including concessions made for the first time on appeal, *Logan v. Commonwealth*, 47 Va. App. 168, 170, 172 (2005) (en banc). Mintbrook's concession that it knew that the fee claim was based on the indemnification provision of the Development Agreement makes it unnecessary to decide whether the amended third-party complaint, standing alone, adequately pleaded that claim. The Supreme Court addressed a similar scenario in *Online Resources Corp. v. Lawlor*, 285 Va. 40 (2013). The company there, like Mintbrook, argued that the complaint "failed to specifically state the basis" for attorney fees as required by Rule 3:25. *Id.* at 52. The company argued that the trial court abused its discretion by permitting the plaintiff to amend the complaint after the jury verdict to plead that the fee claim was based on the fee-shifting provision in the parties' severance agreement. *Id.* at 54. But the company conceded in its opening brief on appeal that it knew during the litigation that the plaintiff was seeking attorney fees based on that fee-shifting provision. *Id.* at 62. The Supreme Court found that concession dispositive because the company's "admission reveals that an amendment on this issue was unnecessary." *Id.*[9] Similarly, Mintbrook admittedly knew the legal basis for the fee claim here. We therefore reverse the trial court's judgment insofar as it denied attorney fees to the third-party plaintiffs under the indemnification provision.

CONCLUSION

The trial court correctly found that the Development Agreement unambiguously required Mintbrook to construct the Route 28 improvements necessary for VDOT to release the performance bond and accept the dedication of Lafayette Avenue. The court thus correctly required Mintbrook

_____

[9] The company argued that it was unaware that the plaintiff was seeking attorney fees for the entire case, not just for breach of the severance agreement, but the Court held that the plaintiff was not entitled to that "expanded recovery of legal fees." *Id.*

to indemnify Forest Gold for the moneys paid to Groundscapes to complete that work after Mintbrook breached its obligation to build those improvements. We affirm that portion of the judgment.

But the trial court erred in denying attorney fees under the indemnification provision of the Development Agreement. We remand the case for the trial court to determine an appropriate award of attorney fees and costs incurred at trial and on appeal. We note that it is unclear which of the third-party plaintiffs is entitled to that recovery. The Lims signed the Development Agreement that contains the indemnification provision. Yet the parties have litigated the case as if the Lims and Forest Gold are interchangeable. *See supra* note 3. We leave it to the trial court to sort out on remand which is the correct party to receive the fee award.

Record No. 0474-22-4—*Affirmed*.

Record No. 0499-22-4—*Reversed and remanded*.