# CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Builders' Supply, Inc.

v.

DeGaetani & Sons Drywall, Inc.,
and Brooks and Co.
General Contractors, Inc.

September 23, 1999

Ended Cause No. 93-2413

BY JUDGE MELVIN R. HUGHES, JR.

This garnishment action brought by a judgment creditor, Virginia Builders' Supply, Inc., (Virginia Builders) seeks to determine amounts owed, if any, by the suggested garnishee, Brooks and Company General Contractors, Inc., (Brooks) to a judgment debtor, DeGaetani & Sons Drywall, Inc., (DeGaetani). This case is the second garnishment summons served on Brooks by Virginia Builders. Following a trial to the court, the parties submitted post trial briefs after which the case has been under advisement.

On June 29, 1993, Virginia Builders was granted judgment against DeGaetani for $49,688.17 with interest to accrue at 24% *per annum* and immediate rights of execution. In the first garnishment, Virginia Builders caused a garnishment summons to be served on Brooks on July 8, 1993. Brooks requested and received a stay of the action to allow an arbitration called for in the contract between it and DeGaetani to go forward. DeGaetani did not appear in the arbitration, and Brooks refused Virginia Builders' request to intervene. The arbitration award found that Brooks owed DeGaetani nothing.

In April of 1994, this court heard argument in the garnishment and, in an order dated July 12, 1994, dismissed the garnishment summons. The Supreme

Court of Virginia reversed and remanded the case so that Virginia Builders could pursue its claims notwithstanding the arbitration decision. *See Virginia Builders' Supply, Inc. v. Brooks & Co. General Contractors, Inc.*, 250 Va. 209 (1995). On remand, the court found that, under the contracts at issue, payment to DeGaetani was not yet due, and the court dismissed the summons without prejudice. (*See* Order of March 6, 1996, for Ended Cause 93-2413.)

In July 1998, Virginia Builders filed the instant garnishment summons naming Brooks again as garnishee based on the same contracts, now with the contingency fulfilled. First, Brooks asserts that attorneys' fees incurred in defending the prior garnishment action should be used as set off against amounts owed to DeGaetani. Brooks relies on the language of the four contracts Brooks entered with DeGaetani and on *Hiss v. Friedberg*, 201 Va. 572 (1960), and its progeny. Second, Brooks seeks to again invoke the arbitration award to estop Virginia Builders from pursuing this garnishment.

The court finds that Brooks' attorneys' fees may not be used to set off amounts Virginia Builders seeks to garnish. Furthermore, the arbitration award in this case does not bind Virginia Builders from bringing this garnishment action.

Brooks asserts that it is entitled to set off attorney's fees incurred in the first garnishment action against any amounts Virginia Builders claims now in this action. Brooks relies on Article I of each of the four contracts entered into between it and DeGaetani. Article I incorporates the General Conditions of the Contract for Construction (General Conditions) into each subcontract. (See Def.'s Ex. 9.) In the General Conditions, Article 9.10.2 allows Brooks' rights of indemnification for costs and reasonable attorneys' fees for, *inter alia*, discharging liens and other encumbrances not satisfied by DeGaetani under the contract. Brooks urges that "liens" in Article 9.10.2 includes not only mechanic's liens, but also liens arising from writs of fieri facias in a subsequent garnishment action. A contrary interpretation, Brooks argues, would effectively rewrite the contract.

The Supreme Court of Virginia has recently reaffirmed principles for the construction of contracts. See *Lansdowne Dev. Co. v. Xerox Realty*, 257 Va. 392, 400-401 (1999). First, the court must construe clear and unambiguous terms according to their plain meaning. *Id.* The court is to look to the document as a whole to discern the plain meaning of any part of the contract. *Id.* Second, the court "will not insert by construction, for the benefit of a party, a term not expressed in the contract." *Id.*

Relevant to this case, "garnishment is a proceeding to enforce the lien of a writ of fieri facias on a liability of any person other than the debtor; the action substantially is a proceeding by the debtor in the name of the creditor

against the garnishee. Upon proof of any debt owed by the garnishee to the debtor, the court may enter judgment in favor of the creditor against the garnishee in the amount of such debt." *Virginia Builders' Supply*, 250 Va. at 213 (internal quotes and citations omitted).

As described by the Supreme Court, the lien here is on the debt owed by Brooks to DeGaetani as compensation for work performed under the construction contracts. Looking at any one of the construction contracts as a whole, the court finds that this lien is not encompassed in the language of Article 9.10.2 of the General Conditions.

Article 9.10 of the General Conditions is entitled "Final Completion and Final Payment." (See Def.'s Ex. 9.) The four sections of the article denote the process and papers required to ensure that performance is completed and that final payment is due the subcontractor, DeGaetani. (See *id.*) Before final payment is due, DeGaetani must ensure that the subject matter of the contract is not encumbered by, *inter alia,* outstanding "liens." (See General Conditions, Article 9.10.2.) After defending against any liens, Brooks may seek reimbursement under the contract from DeGaetani for costs and reasonable attorneys' fees. (See *id.*)

Although other parts of the contract refer to "mechanic's liens" specifically, Article 9.10.2 does not. However, Article 9.10.2, when construed in the context of the whole construction contract, must reasonably be interpreted to mean any liens arising from the various construction projects which make up the subject matter of the contract. The term's plain meaning in the context of these contracts cannot reasonably be understood to mean liens on property, including money, the general contractor owes to the subcontractor once performance is completed and no other liens exist. Otherwise, the term would require DeGaetani to pay for Brooks to defend a claim for payment made by DeGaetani when payment is rightfully due under the contract. That result is not in keeping with the contract's meaning and the intent of the parties as expressed therein.

Absent any liens, DeGaetani may sue Brooks for the debt once DeGaetani is due final payment and payment is refused. If an action were brought by DeGaetani against Brooks, Brooks could not use its attorneys' fees to set off any amount the court determined Brooks owed DeGaetani for performance under the contract. Article 9.10.2 does not direct reimbursement in such a case. Additionally, in a garnishment action under Virginia law, the action to collect the debt may be brought by a judgment creditor of DeGaetani as though DeGaetani sued in its own name. See *Virginia Builders' Supply*, 250 Va. at 213. Here, Virginia Builders is such a creditor. As this proceeding is

brought by DeGaetani in the name of Virginia Builders against Brooks, the fees cannot be used for set off.

The garnishee cannot avoid such a lien by a judgment creditor unless the garnishee has already paid the judgment debtor. Contrary to Brooks' argument, this does not effectively rewrite the contract between the parties. In this ruling, the court declines to expand the provision's reach beyond the contract's plain meaning to include a lien of a writ of fieri facias. Therefore, Article 9.10.2 is inapplicable in this suit.

Brooks' common law defense is based on the rule in *Hiss v. Friedberg*, 201 Va. 572 (1960), which states that a plaintiff suing for breach of contract can recover costs and fees incurred in defending itself in prior suits against third parties where the former litigation was caused by defendant's breach. *See id.* at 577; *see also Long v. Abruzzetti*, 254 Va. 122, 128 (1997); *Fidelity Nat'l Ins. v. Southern Heritage Ins.*, 257 Va. 246, 253-54 (1999). However, the rule does not apply to litigation against the breaching defendant. *Fidelity Nat'l* at 254 (*citing Hiss* at 577-78).

Under the rule in *Hiss*, Brooks would have to show that DeGaetani breached the contract and that it incurred its costs of litigation against Virginia Builders as a direct consequence of that breach. *Hiss* at 578. Next, the *Hiss* model would involve a subsequent suit between Brooks and DeGaetani for breach where Brooks would include in its damages claim the fees it incurred in the prior action against Virginia Builders. *Id.* Brooks would have to show those fees were reasonable in amount and could not have been avoided by reasonable and prudent effort. *Id.*

As noted, I disagree that *Hiss* applies to the facts of this case in a garnishment. First, Brooks did not show that DeGaetani breached its contracts, nor that any alleged breach gave rise to this or to the prior garnishment proceeding. Also, unlike cases where the Supreme Court applied the rule in *Hiss*, this case does not involve a prior action against a third party *and* a subsequent action with the alleged breaching party. Brooks would have the court call Virginia Builders a third party in the first action and then consider it as stepping into DeGaetani's shoes in the second action. However, the parties in both actions are identical both in name and status as creditor and garnishee respectively. Therefore, the framework of *Hiss* simply does not fit the facts.

Any defense that Brooks could have raised in a suit for payment brought by DeGaetani could have been raised against Virginia Builders, which stands in DeGaetani's shoes in this action. Brooks' defenses could have included breach of contract by DeGaetani, but instead, Brooks raises the issue of set off of attorneys' fees. Therefore, the *Hiss* remedy is inappropriate here.

Because Brooks cannot use attorneys' fees incurred as set off against its

debt to DeGaetani, Brooks' arguments regarding its burden in proving attorneys' fees need not be addressed.

The next issue Brooks raises attempts to invoke the arbitration award which was the subject of the Supreme Court's opinion ordering this court to proceed with Virginia Builders' first garnishment action. *Virginia Builders' Supply*, 250 Va. 209 (1995). Brooks focuses on this language in the case at 214:

> When as here, the garnishee commenced arbitration with the judgment debtor after being served with the garnishment summons, and excluded the judgment debtor from the arbitration, the judgment creditor may employ the garnishment court procedure to determine the extent of the debt owed by the garnishee to the judgment debtor.

Brooks argues that the arbitration concluded before the garnishment summons in this action was issued and, therefore, precludes Virginia Builders' recovery. Furthermore, Brooks asserts that when the court dismissed the prior action in its order of March 6, 1996, Virginia Builders should have appealed to preserve its status relative to the arbitration. By not appealing the order and by instituting this new garnishment action instead, Virginia Builders, according to Brooks, is now bound by the arbitration from which Brooks excluded Virginia Builders in the first action.

Again, I disagree with Brooks' description of the case. In addition to the language that Brooks notes, the Supreme Court explained that "the garnishee will not be heard to argue that the judgment creditor has waived its rights by failing to intervene in the arbitration, when it was the garnishee who refused the judgment creditor's request to be allowed to participate." *Id.* In this case, Virginia Builders is still employing the "garnishment court procedure to determine the extent of the debt owed by the garnishee to the judgment debtor." *Id.* Brooks cannot profit now by its prior refusal to allow Virginia Builders to intervene in the arbitration by invoking that award to terminate this action. A contrary finding would controvert not only the language, but also the spirit of that decision. Therefore, the arbitration award does not constrict Virginia Builders from seeking relief in this garnishment action.

Having rejected Brooks' defenses, the court must now decide the amount, if any, that the creditor may reach in garnishment. The court turns to the testimony and exhibits given at the hearing and the briefs filed thereafter.

The first issue raised by both parties involves the admissibility of either party's Exhibit 1. The conflicting exhibits reflect two different accountings of Brooks' debt to DeGaetani, both created by Mr. Crumley, Vice President of Brooks. Virginia Builders' exhibit was completed in April of 1993 for the

purposes of settlement. (*See* Pl.'s Ex. 1.) Brooks' exhibit was formulated later and specifically for the purposes of this litigation. (*See* Def.'s Ex. 1.)

The court accepts Mr. Crumley's most recent work offered as Brooks' first exhibit. Virginia Builders' objections to the exhibit on the grounds of hearsay and the reliability of the exhibit are overruled. The exhibit is a summary but not hearsay because the declarant, Mr. Crumley, was at trial and was cross-examined. *See* 2 Friend, *The Law of Evidence in Virginia*, § 18-30 (4th ed. 1993). Brooks argues, and the court agrees, that the summary is reliable because, among other reasons, Mr. Crumley had to defend his calculations under cross-examination. Therefore, the court begins with Brooks' Exhibit 1 to determine the amount available for garnishment.

Virginia Builders argues that Mr. Crumley admitted that four $500 amounts, three "escrow costs" and one "deduction for warrantee [sic]", were in fact erroneously deducted from the amount owed to DeGaetani. (*See* Virginia Builders' Post-Trial Memo. at 6.) Brooks states that Mr. Crumley testified "unequivocally" that Virginia Builders was correct and that Mr. Crumley included the addition in creating Brooks' Exhibit 1. (*See* Brooks' Post-Trial Reply at 16.) Having no reason to doubt the credibility of Mr. Crumley's testimony and seeing no other witness's testimony to the contrary, the court accepts that the $2000.00 error was corrected in the exhibit offered by Brooks.

Third, Virginia Builders argues that a $575.00 backcharge for work completed by another subcontractor should also be added to the amount owed to DeGaetani. Considering the testimony of Mr. DeGaetani and Mr. Crumley and the exhibits prescribed at trial, the court finds the backcharge erroneous. The court finds that the problems with the bases of columns under the Valcom contract were not caused by DeGaetani and that DeGaetani performed sufficiently based on the specifications given by Brooks. DeGaetani is not at fault, and therefore, is not liable for the additional work to correct the problem. Consequently, the $575.00 charge shall be added back to the total owed by Brooks.

With regard to the change order of $3,942.00 under the Valcom contract, Virginia Builders argues that $2,890.00 for "insulation work performed by others" was wrongly deducted from the amount owed to debtor because the plain meaning of the contract dictates this result. In the alternative, Virginia Builders argues that the contract is ambiguous about whether debtor was required to provide the batt insulation at issue. Virginia Builders asserts that parol evidence in Mr. Crumley's testimony requires that the term "Insulation Work" in Article 2, § 2.1, of the Valcom contract does not include "batt insulation." Brooks argues that the contract is not ambiguous and that Mr.

Crumley's testimony on the issue was correctly ruled upon at the hearing as inadmissible parol evidence.

On this issue, the court finds the contract is not ambiguous. Relying once more on the principles set out in *Lansdowne Development Co.*, discussed above, the contract's plain meaning and the original understanding of the parties was that batt insulation would be included in DeGaetani's obligations. Therefore, the entire $3,942.00 backcharge is properly excluded from the total owed to DeGaetani.

Fifth, Brooks explains that various owners withheld funds from it until various mechanic's liens were discharged. Brooks asks for set off in this action in an amount equal to the interest Brooks would have received had the various owners not withheld payment.

The court notes first that Brooks has not proved its allegations that DeGaetani breached its contracts. No provision in the contracts between Brooks and DeGaetani allows for interest where an owner withholds funds from Brooks. As no breach is proved and the point is not governed by a contract provision, Brooks cannot set off this interest.

The court looks to Brooks' Exhibit 1 to calculate the total amount of interest mistakenly withheld by Brooks. The amounts are $1,610.03 in the Valcom contract, $96.56 in the Mulligans contract, and $702.68 in the Stratford Hall contract. The sum of those figures, $2,409.27, shall be added back to the total owed to DeGaetani.

In sum, the court determines the total amount owed by Brooks to DeGaetani by first taking the total of the four contracts offered in Brooks' Exhibit 1: $2,906.29 (Valcom), $909.40 (Brooks II), $878.44 (Mulligans), and $2,743.43 (Stratford Hall). Next, the court adds the $575.00 backcharge and $2,409.27, the total interest Brooks erroneously deducted in preparing the exhibit. Therefore, the court finds Brooks indebted to DeGaetani in the amount of $10,421.83 and will enter judgment for Virginia Builders and against Brooks in that amount.

The final issue regards judgment interest. In Virginia, the court "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code Ann. § 8.01-382 (1997). The court's decision as to when pre-judgment interest begins to accrue is discretionary. *See Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 631 (1994); *see also Continental Ins. Co. v. City of Va. Beach*, 908 F. Supp. 341 (E.D. Va. 1995). The court finds it appropriate to set interest on Brooks' debt to begin on the date that payment was due.

In 1996, this court entered an order noting that payment was not due until a condition precedent to the contracts was fulfilled. The condition was

fulfilled and payment became due on January 1, 1998. Therefore, pre-judgment interest shall be deemed to run from that date at eight percent *per annum* pursuant to Virginia Code § 6.1-330.53.